*Decision will be entered under Rule 155.*

CHEVRON CORPORATION AND AFFILIATED COMPANIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24954–90.         Filed June 27, 1995.

---

*Daniel Horowitz, John P. McAllister, Carl A. Nordberg, Jr.,* and *Robin L. Greenhouse,* for petitioners.

*Alan Summers, Paul G. Robeck, Richard T. Ainsworth,* and *Howard A. Berger,* for respondent.

TABLE OF CONTENTS

Page

FINDINGS OF FACT

Stipulations .......................................................................................... 722
Consolidated Return ............................................................................. 723
1977 and 1978 Returns ........................................................................ 723
Pleadings ............................................................................................... 724
California Franchise Tax ...................................................................... 725
Dividends ............................................................................................... 725

OPINION

I. Introduction ..................................................................................... 726
II. Preliminary Matters ...................................................................... 727
  A. Standard of Review ...................................................................... 727
  B. Statutory Framework .................................................................... 729
    1. Determination of Source of Income ......................................... 729
    2. Foreign Tax Credit ..................................................................... 729
  C. Pre-1977 Regulations ................................................................... 730
  D. 1977 Regulations .......................................................................... 731
  E. Special Rule for Income Taxes .................................................... 731
    1. 1977 Special Rule ....................................................................... 731
    2. 1988 Temporary Regulations .................................................... 732
    3. 1991 Final Regulations .............................................................. 732
      a. Section 1.861–8(e)(6)(i) ......................................................... 733
      b. Section 1.861–8(e)(6)(ii) ........................................................ 735
      c. Section 1.861–8(e)(6)(iii) ....................................................... 735
    4. Examples ..................................................................................... 736
  F. Consolidated Foreign Tax Credit ................................................. 736

G. California Franchise Tax ................................................................. 737
1. *Barclays Bank* ........................................................................ 737
2. Unitary Business; Formulary Apportionment; Worldwide
Combined Reporting ................................................................ 737
3. Worldwide Combined Reporting v. Separate Accounting ........ 738
4. Vocabulary ............................................................................. 739
5. Intrastate Apportionment ....................................................... 740
6. Chevron Combined Report Group ............................................ 741
H. Separate Reporting Formulary Apportionment ............................ 742
I. Separate Reporting Issues; FOGEI, FORI, and NORI Issues ..... 743
J. Allocation and Apportionment Methods at Issue ......................... 743
1. Introduction ........................................................................... 743
2. The Gross Income Method ..................................................... 744
a. Description ........................................................................ 744
b. Illustration ........................................................................ 744
3. The Factor Operations Method ............................................... 745
a. Description ........................................................................ 745
b. Illustration ........................................................................ 746
4. The Statutory Notice Method ................................................. 747
a. Description ........................................................................ 747
b. Illustration ........................................................................ 748
5. The Pro Rata Method ............................................................. 748
a. Description ........................................................................ 748
b. Illustration ........................................................................ 749
6. The Examples Method ............................................................ 749
a. Description ........................................................................ 749
b. Illustration ........................................................................ 750
7. Comparison ............................................................................ 750
III. Petitioners' Methods Are Contrary to the Regulations ................. 750
A. Introduction .............................................................................. 750
B. What Do the Regulations Provide? ............................................ 752
C. Conclusion ................................................................................ 754
IV. Section 1.861–8(e)(6)(i) Is Not Being Applied in an Impermis-
sible Retroactive Fashion ............................................................ 754
A. Petitioners' Argument ............................................................... 754
B. Analysis .................................................................................... 755
C. Respondent's Pro Rata Method ................................................. 758
D. Conclusion ................................................................................ 758
V. Section 1.861–8(e)(6)(i) Is Valid ................................................... 758
A. Petitioners' Arguments ............................................................. 758
B. Analysis .................................................................................... 759
1. Introduction ........................................................................... 759
2. Congress' Intent Is Not Unambiguously Expressed ................ 759
3. Section 1.861–8(e)(6)(i) Contains a Reasonable Construction
of the Statute ........................................................................ 760
a. Factual Relationship Determinative .................................... 760
b. Congressional Mandate ...................................................... 762
c. Historical Perspective ........................................................ 763
d. A Reasonable Scheme of Allocation and Apportionment ...... 764
(1) A Commonsense Dichotomy ............................................. 764

(2) One Reasonable Approach to Allocation ........................... 764
(3) Petitioners' Expert Witnesses .......................................... 767
(4) Tax Reform Act of 1986 ..................................................... 768
(5) Combined Report Group Income ...................................... 769
  C. Conclusion ................................................................................... 770
VI. Petitioners Are Entitled To Rely on the Examples Method .......... 771
VII. Conclusion ........................................................................................ 774

APPENDICES .......................................................................................... 775

Glossary .................................................................................................. 775
Regulations ............................................................................................ 777

HALPERN, *Judge:* Respondent determined deficiencies in the Federal income tax of petitioners for 1977 and 1978 in the amounts of $44,860,941 and $33,035,455, respectively. The parties have resolved all issues except for the allocation and apportionment of petitioners' deductions for State income and franchise taxes.

A trial was commenced on February 28, 1994. Previously, by order dated October 14, 1993 (the order), the Court had granted petitioners' motion to limit issues for trial and had ordered that the February trial address only the proper method for allocating and apportioning certain State tax deductions between domestic and foreign source income (and, with respect to foreign source income, among certain classes of foreign source income). The order also provided that the February trial would concern only (1) the California State tax deductions of all petitioners and (2) the non-California State tax deductions of one petitioner, Chevron, U.S.A., Inc. Following receipt of our report with regard to the February trial, the parties will determine whether any further trial is necessary.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

*Stipulations*

The parties have entered into the following stipulations:
1. First stipulation for February 28, 1994, trial;
2. second stipulation for February 28, 1994, trial;
3. first stipulation of facts;

4. second stipulation of facts;
5. third stipulation of facts;
6. fourth stipulation of facts.

All stipulated facts are found as stipulated, and all stipulations and attached exhibits are incorporated herein by this reference.

*Consolidated Return*

Petitioner Chevron Corp. (Chevron), formerly known as Standard Oil Co. of California, is a Delaware corporation. It has its principal place of business in San Francisco, California. Chevron is the common parent corporation of an affiliated group of corporations making a consolidated return of income (the affiliated group). Chevron timely made consolidated returns for 1977 and 1978 (the 1977 and 1978 returns, respectively). Each petitioner herein was an includable corporation in the affiliated group during at least one of the years in issue.[1]

*1977 and 1978 Returns*

In the 1977 and 1978 returns, Chevron (as common parent of the affiliated group) deducted total State income and franchise taxes, and allocated and apportioned those deductions between domestic and foreign source gross income, as follows:

| Year | State taxes deducted | Domestic source gross income | Foreign source gross income |
|------|------|------|------|
| 1977 | $58,760,671 | $53,336,123 | $5,424,548 |
| 1978 | 51,091,866 | 46,696,892 | 4,394,974 |

In her notice of deficiency, respondent adjusted the amounts of State income and franchise taxes allocated and apportioned to foreign source gross income by increasing such amounts as follows:

---

[1] The makeup of the affiliated group differed between 1977 and 1988, as, no doubt, it differs today from either of those years. The precise makeup of the affiliated group at any time is not important for purposes of this report. Accordingly, for simplicity, we will refer only to the affiliated group, without distinction as to the period covered. Also, during 1977 and 1978 (and other periods relevant to this report), Chevron Corp. (Chevron) was known as Standard Oil Co. of California (SOCAL). For simplicity, we will use the name Chevron to refer both to Chevron and to SOCAL.

| Year | Increase in State taxes allocated and apportioned to foreign source gross income |
|------|---------------------------------------------------------------------------------|
| 1977 | $19,607,174 |
| 1978 | 22,061,645 |

Respondent's adjustments with regard to such allocation and apportionment did not change the consolidated taxable income of the affiliated group for either year. Rather, such adjustments affected (and limited) the availability of foreign tax credits under section 904.

*Pleadings*

In their second amended petition, petitioners assign error to respondent's adjustments as set forth above. Alternatively, petitioners claim that respondent erred in determining the amount of State taxes that should be allocated and apportioned to foreign source gross income. In support of such assignments of error, petitioners aver the following:

During 1977 and 1978, Chevron Corporation and certain subsidiaries of Chevron Corporation paid state income and franchise taxes to various states. Most of these state income and franchise taxes were allocable to U.S. source income.

Petitioners also claim overpayments in tax based, in part, on the following claim:

Chevron Corporation and certain of its subsidiaries are entitled to increase the amount of state and local income and franchise taxes which are allocated to domestic source income. These taxes are produced by and properly attributable to domestic operations, the income from which is domestic source income, and thus these taxes should be allocated to domestic source income.

In her answer to the second amended petition, respondent admits that, during 1977 and 1978, Chevron Corp. and certain of its subsidiaries paid State income and franchise taxes to various States, but denies all of petitioners' other claims or averments set forth above.

*California Franchise Tax*

With certain exceptions not here pertinent, the California Revenue and Taxation Code imposes an annual franchise tax (the California tax) on a corporation "doing business within the limits of this state * * * for the privilege of exercising its corporate franchise within this state". Cal. Rev. & Tax. Code sec. 23151 (West 1992). The California tax is measured by a corporation's net income "derived from or attributable to sources * * * within" California. *Id.* sec. 25101. A corporation with multistate activities has net income derived from sources within California (and, therefore, is subject to California tax) if, pursuant to various rules dealing with different categories of income, net income is allocated to California. See *id.* secs. 25120–25141. Business income is allocated to California on the basis of three factors: Property, payroll, and sales within the State. See *id.* secs. 25128, 25129, 25132, 25134.

In the case of two or more corporations under common control, the California Revenue and Taxation Code provides that a "combined report" may be required, so that (1) certain compensating adjustments between or among such corporations may be made or (2) the California tax may be imposed as though the entire net income shown on the combined report was that of one person. See *id.* sec. 25102. Common control is established on the basis of the same interests having "Direct or indirect ownership or control of more than 50 percent of the voting stock of" two or more corporations. See *id.* sec. 25105.

Intercompany dividends are eliminated from the income of a recipient in the case where the California tax of the recipient is determined with reference to the income and apportionment factors of another corporation with which it is doing a unitary business and such dividends are paid out of the income of such unitary business. See *id.* sec. 25106.

*Dividends*

During the years in issue, Chevron received dividends from P.T. Caltex Pacifica Indonesia, a corporation 50 percent of the stock of which was owned by Chevron. Petitioner Chevron Oceanic (Chevron Oceanic) received dividends from Ara-

bian American Oil Co., a corporation approximately 30 percent of the stock of which was owned by Chevron Oceanic.

OPINION

## I. *Introduction*

At issue here is the allocation and apportionment of certain State taxes between domestic and foreign source gross income. Resolution of that issue will determine the extent to which petitioners may take a credit for foreign taxes under section 901. The amount of credit that may be taken under section 901 is limited by section 904. Section 904 limits the amount of credit that may be taken to the amount of foreign tax that bears the same ratio to the tax against which the credit is being taken as taxable income from sources outside the United States bears to worldwide taxable income. In order to compute taxable income from sources outside the United States, it is necessary to determine the deductions properly apportioned or allocated thereto (and a ratable portion of deductions that cannot be definitely allocated thereto). Sec. 862(b). It is readily apparent that, with a given sum of taxable income, the smaller the taxable income from sources outside the United States, the lesser will be the quotient that determines the limitation on the amount of creditable foreign taxes. Conversely, the larger such taxable income, the greater the quotient. For that reason, taxpayers with creditable foreign taxes may well prefer to increase foreign source taxable income and to decrease domestic source taxable income. It is in that context that the parties have locked horns in respect of the allocation and apportionment of State taxes under sections 861(b) and 862(b) and the regulations interpreting those provisions.

Section 1.861–8(a)(2), Income Tax Regs., provides that "allocations and apportionments are made on the basis of the factual relationships of deductions to gross income." The questions we must answer today, however, are not principally factual. Rather, petitioners have brought into question (1) respondent's authority to take a certain position in her regulations concerning the allocation and apportionment of State income taxes and (2) the application of those regulations to the facts at hand. Following our resolution of those questions, the parties will attempt to allocate and apportion

the State taxes in question. If necessary, they will request a further hearing.

A number of factors conspire to make it difficult for us to take those questions head on: One, the statutory language in question is less than precise. Two, the regulation is exceedingly complex. Three, the formula apportionment tax system employed by California and certain other States with which we are here concerned apportions income in a way that is different from that of the Federal income tax system. Four, the methods adopted by the parties for allocating and apportioning the State taxes in question are themselves complex.

The difficulties we have enumerated necessitate that we engage in a rather lengthy discussion of certain preliminary matters. Thus, for instance, we must describe in some detail the workings of a formula apportionment income tax system (viz, the California tax). Because petitioners have challenged not only the validity of a regulation but also respondent's authority to modify that regulation in what petitioners describe as an impermissible retroactive fashion, we must closely examine the regulation as it exists today, the regulation as it existed in the past, and what changes were made to it. We must describe the methods adopted by the parties. It is clear that we must cover a lot of ground before we get to the questions presented by petitioners. Once we have covered that ground, we will answer those questions in the following order: Are petitioners' methods of allocating and apportioning State income taxes contrary to the regulations? If so, are the regulations being applied in an impermissible retroactive fashion? If not, are the regulations invalid? If they are valid, may petitioners rely on certain examples found in the regulations to improve on the result that would obtain from the imposition of one of respondent's methods?

## II. *Preliminary Matters*

### A. *Standard of Review*

Initially, we note that the regulation primarily in question (section 1.861–8, Income Tax Regs.) was promulgated pursuant to the general authority granted to the Secretary of the Treasury by section 7805(b) and not pursuant to specific legislative authority. Cf. *Perkin–Elmer Corp, v. Commissioner,* 103 T.C. 464 (1994) (so finding with regard to sec.

1.861–8(e)(3)(iii), Income Tax Regs.). "Accordingly, 'we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision.'" *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24 (1982) (quoting *Rowan Cos. v. United States,* 452 U.S. 247, 253 (1981)). An interpretative regulation will be upheld if it "'[implements] the congressional mandate in some reasonable manner'". *Id.* at 24 (quoting *United States v. Correll,* 389 U.S. 299, 307 (1967)). In determining whether section 1.861–8, Income Tax Regs., is a permissible construction of the underlying statute, we look to the guidelines set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). As the Supreme Court recently has summarized:

Under the formulation now familiar, when we confront an expert administrator's statutory exposition, we inquire first whether "the intent of Congress is clear" as to "the precise question at issue." *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842 (1984). If so, "that is the end of the matter." *Ibid.* But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.,* at 843. If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment "controlling weight." *Id.* at 844, 104 S. Ct., at 2782. [*NationsBank v. Variable Annuity Life Ins. Co.,* 513 U.S. ____, 115 S. Ct. 810, 813–814 (1995).]

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra,* the Supreme Court instructed lower courts that, to sustain a regulation, they:

need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. * * * [*Id.* at 843 n.11; citations omitted.]

In the context of a tax regulation, the Court has stated: "The choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 488 (1979).

B. *Statutory Framework*

1. *Determination of Source of Income*

Section 1.861–8, Income Tax Regs., contains an interpretation of section 861, but it is part of the scheme also incorporating sections 862 through 864 and 901 through 908 by which foreign tax credits are computed. *Perkin-Elmer Corp. v. Commissioner, supra* at 470.

Sections 861 through 864 determine the sources of income for purposes of the income tax. Sections 861(a) and 862(a) explicitly allocate certain important items of gross income to sources within or without the United States, as the case may be. Sections 861(b) and 862(b) state in general terms how to determine taxable income of a taxpayer from sources within or without the United States after gross income from such sources has been determined. The language pertaining to the allocation of expenses, losses, and deductions to gross income that is found in sections 861(b) and 862(b) has remained substantially unchanged for over 80 years. See sec. 217(b) and (d), respectively, of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 243–244. The pertinent language of sections 861(b) and 862(b) is as follows:

From the items of gross income specified in subsection (a) * * * [as being income from sources either within or without the United States] there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto * * * [,] and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income. * * *

2. *Foreign Tax Credit*

The predecessor of section 901 was enacted as section 238(a) of the Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1080–1081 (1919), to provide relief from U.S. taxation where income was already taxed by another country. *American Chicle Co. v. United States,* 316 U.S. 450, 451 (1942). Under section 901, a taxpayer may elect to claim a credit for foreign taxes paid, subject to the limitation of section 904. Domestic corporations may also claim a credit for the taxes deemed paid under sections 902 and 960 where the corporation owns at least 10 percent of a foreign corporation. If the election

under section 901 is not made, a taxpayer may deduct the taxes paid under section 164.

The overall limitation language of section 904 was added in 1921 as part of section 238(a) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 258, to prevent foreign tax credits from eliminating U.S. tax on domestic source income. *Theo H. Davies & Co. v. Commissioner,* 75 T.C. 443, 446 n.9 (1980), affd. 678 F.2d 1367 (9th Cir. 1982).

### C. *Pre-1977 Regulations*

Until 1977, the requirement of sections 861(b) and 862(b) that expenses, losses, and other deductions (hereafter referred to collectively as deductions) be properly apportioned or allocated between domestic source and foreign source gross income was implemented by rather sketchy regulations. See, e.g., sec. 1.861–8 (1976).[2] Section 1.861–8 (1976) parroted the statute concerning proper apportionment or allocation and provided that unassigned deductions were allocated to domestic (or foreign) sources in the ratio that domestic (or foreign) gross income bore to total gross income. *Id.* In *Grunebaum v. Commissioner,* 50 T.C. 710 (1968), affd. 420 F.2d 332 (2d Cir. 1970), we addressed a pre-1977 year and the taxpayers' claim that certain deductions, including State and local taxes, related solely to domestic source gross income. We imposed upon the taxpayers the burden of showing that the deductions in question "definitely" related to domestic source gross income "within the degree contemplated by the statute." *Id.* at 720; cf. *Stemkowski v. Commissioner,* 76 T.C. 252, 302 (1981) (burden of proof is on taxpayers to establish that their deductions "were definitely related or proximately connected" to domestic source gross income), affd. in part, revd. in part on other grounds and remanded 690 F.2d 40 (2d Cir. 1982).

---

[2] Following adoption of the Internal Revenue Code of 1954, regulations interpreting sec. 861 were first promulgated in 1957. See Treasury Decision (T.D.) 6258, 1957–2 C.B. 368, adding sec. 1.861, Income Tax Regs. Sec. 1.861–8, Income Tax Regs., has been amended by numerous T.D.'s since then. In the course of our discussion, it will be necessary to refer to sec. 1.861–8, Income Tax Regs., as amended to a certain time. To distinguish between or among different versions of sec. 1.861–8, Income Tax Regs., we will include a parenthetical reference to a year in each citation to the regulation other than in a citation to the regulation as presently in effect. E.g., secs. 1.861–8(e)(6) (1976) and 1.861–8(e)(6)(i). The parenthetical reference is meant to indicate the regulation as amended through the end of the indicated year. The term "Income Tax Regs." will be omitted in all further references to Income Tax Regs. We will show only the section and, if appropriate, year: e.g., sec. 1.861–8(e)(6) (1976).

## D. *1977 Regulations*

Extensively revised regulations on the allocation and apportionment of deductions were promulgated in 1977. According to Professors Bittker and Lokken, a principal purpose of the regulations was to insure that foreign operations of domestic corporations are charged with a proper share of deductions. 3 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 70.10.1, at 70–36 (2d ed. 1991).

The present regulations are based on "the factual relationship of deductions to gross income." Sec. 1.861–8(a)(2). The regulations are exceedingly complex. Professors Bittker and Lokken, however, have managed an admirable summary:

Generally, * * * [application of the regulations] is a two step process. Deductions are first allocated to income from the activities and investments in which the deductible costs were incurred. If the income class to which a deduction is allocated consists solely of income within or outside the relevant taxable income category (usually, foreign source taxable income or taxable income effectively connected with U.S. business), the allocation is the final step in the process. In other cases, the deduction is apportioned between the portion of the income class included in the statutorily relevant category and the portion falling outside the category. The apportionment must be done on a basis that reasonably reflects the factual relationships between deductions and income.

Special rules are provided for several types of deductions, including * * * income taxes * * *

[3 Bittker & Lokken, *supra* par. 70.10.1, at 70–36; fn. refs. omitted.]

## E. *Special Rules for Income Taxes*

### 1. *1977 Special Rule*

The 1977 revision to section 1.861–8 provided a relatively concise special rule for dealing with income taxes:

*Income Taxes.* The deduction for State, local, and foreign income, war profits, and excess profits taxes allowed by sec. 164 shall be considered definitely related and allocable to the gross income with respect to which such taxes are imposed. For example, if a domestic corporation is subject to State income tax and the amount of such State income tax is imposed in part on the amount of foreign source income, that part of such State income tax attributable to foreign source income is definitely related and allocable to foreign source gross income. Examples (25) and (26) of paragraph (g) of this section illustrate the application of this subparagraph (6). [Sec. 1.861–8(e)(6) (1977).]

## 2. *1988 Temporary Regulations*

Section 1.861–8(e)(6) (1977) was revised in 1988 by Treasury Decision (T.D.) 8236, 1989–1 C.B. 228 (T.D. 8236), which, among other things, struck out the language of section 1.861–8(e)(6) (1977) and provided that guidance with regard to income taxes was to be found at section 1.861–8T(e)(6), Temporary Income Tax Regs., 53 Fed. Reg. 49872 (Dec. 12, 1988) (which provision was added by T.D. 8326).[3] Paragraph (e)(6)(i) of section 1.861–8T (1988) is effective for taxable years beginning after 1976 and provides basically the same rule as section 1.861–8(e)(6) (1977). T.D. 8236, 1989–1 C.B. at 228, states that the prior rule is clarified by adding that the deduction for a State franchise tax that is computed based on income is to be allocated in the same manner as an income tax.

Paragraph (e)(6)(ii) of section 1.861–8T (1988) refers to five examples of the application of paragraph (e)(6)(i) and provides that methods other than those illustrated in the examples may be more appropriate in factual situations that differ from those in the examples. Paragraph (e)(6)(ii) is generally effective for taxable years beginning after 1987, but taxpayers have the option of applying the paragraph to deductions for State taxes incurred in earlier years.

Paragraph (e)(6)(iii) of section 1.861–8T (1988) provides effective dates.

The text of section 1.861–8T(e)(6) (1988) also served as the text of a Notice of Proposed Rulemaking (to amend section 1.861–8(e)(6) (1988)). INTL–41–88, 53 Fed. Reg. 49893–49894 (Dec. 12, 1988).

## 3. *1991 Final Regulations*

In 1991, the text of section 1.861–8T(e)(6) (1988), with substantial revisions, was adopted as a final regulation by T.D. 8337, 1991–1 C.B. 92 (T.D. 8337).[4] The resulting final regulation is section 1.861–8(e)(6). The portions of section

---

[3] Sec. 1.861–8T(e)(6), Temporary Income Tax Regs., was removed and reserved by T.D. 8337, 1991–1 C.B. 92, which amended sec. 1.861–8(e)(6), as set forth below. Sec. 1.861–8T(e)(6), Temporary Income Tax Regs., as added by T.D. 8326, 1989–1 C.B. 228 (and prior to removal) will hereafter be referred to as sec. 1.861–8T(e)(6) (1988). The term "Temporary Income Tax Regs." will be omitted in all further references to Temporary Income Tax Regs.

[4] Announcement 91–88, 1991–24 I.R.B. 120, corrected certain errors in T.D. 8337.

1.861–8(e)(6) relevant to this report are set forth in an appendix.

a. *Section 1.861–8(e)(6)(i)*

Paragraph (e)(6)(i) of section 1.861–8 contains general rules for allocation and is effective for taxable years beginning after 1976. Sec. 1.861–8(e)(6)(iii). In addition to restating the basic principle that the State income tax must be allocated and apportioned based on the income attributed to the taxpayer's activities in the State, the general allocation rules contained in the temporary regulations have been expanded to include specific allocation rules that were formerly described only in the examples in section 1.861–8T(g) (prior to its revision by T.D. 8337). Specifically, if foreign source income of a corporation related by ownership to a corporate taxpayer is attributable to the activities conducted by the taxpayer in the State and subject to State income tax (as may occur in the case of a State unitary income tax), then, for purposes of section 904, the State tax deduction is allocable to foreign source income of the related corporation.[5]

The application and consequences of the related corporation rule of paragraph (e)(6)(i) are not readily apparent. A commentary on that rule that appeared in 1991 may aid the reader's understanding.

This allocation appears to be required even in cases in which the related corporation does not join in the filing of a consolidated U.S. income tax return with the corporation that is subject to the state tax liability. Thus, if a U.S. parent company incurs a state unitary tax that is imposed in part on its foreign subsidiary's taxable income, the state tax must be allocated to the § 904(d) category to which [the] foreign subsidiary's income is properly attributed, even though the foreign subsidiary's income is not reflected in the U.S. tax return of the corporation claiming the deduction for the state tax liability. While there is a computational relationship between the state tax and the income of the foreign subsidiary, it is not clear when or if this income will be repatriated and subject to U.S. taxation. The regulations do not allow the taxpayer to reallocate the state tax attributable to deferred earnings of a foreign subsidiary over all other income actually reflected in the U.S. income tax return. Presumably, this allocation to income that is not included in the current year's return is based on the Treasury's historical position that a deduction that is factually related to a class of gross income must be allocated to that class, even if there is no

---

[5] This and certain other descriptions of sec. 1.861–8(e)(6) are drawn from Tuerff et al., "Allocation of State Income Tax and Charitable Contribution Deductions: An Exercise in Mixing Oil and Water", 20 Tax Mgmt. Intl. J. 398 (1991).

income in the class during the current taxable year. * * * [Tuerff et al., "Allocation of State Income Tax and Charitable Contribution Deductions: An Exercise in Mixing Oil and Water", 20 Tax Mgmt. Intl. J. 398, 399 (1991).]

The related corporation rule is illustrated in example (29) of section 1.861–8(g) (also adopted by T.D. 8337, 1991–1 C.B. 92, 101).

Paragraph (e)(6)(i) of section 1.861–8 also prohibits a taxpayer from apportioning the State tax based on a hypothetical State taxable income determined using Federal geographic sourcing principles if the State imposes its tax using different principles. That rule is illustrated in example (32) of section 1.861–8(g).

Paragraph (e)(6)(i) of section 1.861–8 contains a specific rule for allocating State tax to portfolio dividends. A portfolio dividend is a dividend paid from a corporation that is not included in the consolidated or unitary group of corporations that aggregated their income and deductions to determine State taxable income. Therefore, the dividend income is included in State taxable income of the taxpayer and is subject to the State's apportionment fraction, but the apportionment factors (e.g., property, payroll, and sales) of the payor are not included in the apportionment fraction used to determine State taxable income. If a portfolio dividend is received from a foreign corporation, State tax attributable to the dividend is specifically allocated to a class of gross income consisting solely of foreign source dividend income. The portfolio dividend rule is illustrated by example (28) of section 1.861–8(g).

Paragraph (e)(6)(i) of section 1.861–8 also addresses the allocation and apportionment of State taxes in the case of an affiliated group of corporations making a consolidated return. In computing the consolidated section 904(d) limitation pursuant to section 1.1502–4, the State tax deduction is allocated and apportioned to the appropriate section 904(d) foreign source income even though the taxpayer has a loss in that category of income for the taxable year, before taking into account the State income tax deduction. That rule is illustrated by example (30) of section 1.861–8(g).

b. *Section 1.861–8(e)(6)(ii)*

Paragraph (e)(6)(ii) of section 1.861–8 expresses in general terms the methodology for allocating, and apportioning if necessary, State income tax. It provides that the State income tax deduction is allocated and apportioned by reference to the taxable income that State law attributes to the taxpayer. In short, the State tax deduction is to be allocated and apportioned with respect to taxable income as determined under State law, not Federal taxable income. Reference is made to examples (25) through (32) of section 1.861–8(g) for illustrations of the methodology for allocating State income tax. Those examples generally presume that State tax is imposed on domestic income to the extent that State taxable income does not exceed domestic source taxable income determined for Federal income tax purposes. Certain adjustments are made, however, to account for differences between taxable income determined for State and Federal purposes, and to specifically allocate State tax to portfolio dividends. Before applying a method of allocation and apportionment illustrated in the examples, a taxpayer may modify the computation of State taxable income to take into account differences in the computation of State and Federal taxable income. E.g., example (31) allows a taxpayer to recompute State taxable income to reflect differences in the computation of State and Federal income taxes. Any such modification, however, may not violate the general rules prescribed in section 1.861–8(e)(6)(i). See, e.g., example (32). In addition to supplementing the general rules concerning allocation found in paragraph (e)(6)(i), paragraph (e)(6)(ii) provides two safe harbors, which are applicable to taxable years ending after March 12, 1991. Otherwise, the rules of paragraph (e)(6)(ii) are applicable to taxable years beginning after 1987, but taxpayers have the option of applying such rules to earlier years.

c. *Section 1.861–8(e)(6)(iii)*

Paragraph (e)(6)(iii) of section 1.861–8 provides effective dates.

### 4. *Examples*

Section 1.861–8(g) provides examples illustrating the principles of section 1.861–(8). Examples (28) through (32) have already been mentioned. Examples (25) and (26) are substantially unchanged from both the 1977 regulations and the temporary regulations. Examples (27) and (28) are substantially unchanged from the temporary regulations (where they first appeared). Example (25) provides that the deduction for State income taxes is allocable to foreign source income when the laws of the States imposing tax on the taxpayer do not specifically exempt foreign source income, and the total State taxable income exceeds the amount of domestic source taxable income determined for Federal income tax purposes. Example (26) describes the allocation and apportionment of State income tax when one of the taxing States explicitly exempts foreign source income. The text of examples (25) and (26) is set forth in the appendix referred to earlier. In example (27), the taxpayer has income-producing activities in a State that does not impose an income tax, and the example illustrates the computation of a hypothetical taxable income for that State so that Federal taxable income and aggregate State taxable income can be compared for purposes of allocation and apportionment.

Example (33) illustrates the operation of the elective safe harbor methods set forth in section 1.861-8(e)(6)(ii)(D).

### F. *Consolidated Foreign Tax Credit*

The common parent corporation of an affiliated group of corporations making a consolidated return can use the foreign tax credit in computing the consolidated tax liability of the group. See sec. 1.1502–4(a). Such credit is determined under the principles of sections 901 through 905 and section 960. Sec. 1.1502–4(c). For purposes of computing the group's overall limitation under section 904(a), the aggregate of the separate taxable incomes of the members of the group from sources outside of the United States is used to determine the numerator of the limiting fraction, adjusted to take into account certain items taken into account in computing consolidated taxable income. Sec. 1.1502–4(d). The denominator of the limiting fraction is the consolidated taxable income of the group. *Id.*

## G. *California Franchise Tax*

### 1. *Barclays Bank*

In order to appreciate the positions of the parties, it is necessary to have some understanding of California's method of levying its corporate franchise tax on corporations doing business in California. We have provided a bare-bones description of that tax (the California tax) in our findings of fact. The California tax, as in effect at least during 1977, one of the years here in issue, was recently the subject of an opinion of the Supreme Court: *Barclays Bank v. Franchise Tax Bd.,* 512 U.S. ____, 114 S. Ct. 2268 (1994) (rejecting constitutional challenges to the California tax). In that case, a consolidated case, the petitioners were Barclays Bank PLC and Colgate-Palmolive Co., a multinational banking enterprise and a multinational manufacturing and sales enterprise, respectively, each with operations in California. With regard to the California tax, the Supreme Court said:

During the years here at issue, California determined the state corporate franchise tax due for these operations under a method known as "worldwide combined reporting." California's scheme first looked to the worldwide income of the multinational enterprise, and then attributed a portion of that income (equal to the average of the proportions of worldwide payroll, property, and sales located in California) to the California operations. The State imposed its tax on the income thus attributed to Barclays' and Colgate's California business. [*Id.* at ____, 114 S. Ct. at 2271–2272.]

### 2. *Unitary Business; Formulary Apportionment; Worldwide Combined Reporting*

In *Barclays Bank,* the Supreme Court sustained the California tax against challenges under both the Commerce and Due Process Clauses of the Federal Constitution. "The Due Process and Commerce Clauses of the Constitution", the Court began, "prevent States that impose an income-based tax on nonresidents from 'tax[ing] value earned outside [the taxing State's] borders.'" *Id.* at ____, 114 S. Ct. at 2272 (citation omitted; brackets in original). The Court continued:

But when a business enterprise operates in more than one taxing jurisdiction, arriving at "precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Container Corp.* [*of America v. Franchise Tax Bd.*], 463 U.S. [159], at 164 [1983]. Every method of allocation

devised involves some degree of arbitrariness. See *id.*, at 182, 103 S. Ct. at 2949.

One means of deriving locally taxable income, generally used by States that collect corporate income-based taxes, is the "unitary business" method. As explained in *Container Corp.*, unitary taxation "rejects geographical or transactional accounting," which is "subject to manipulation" and does not fully capture "the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise." *Id.*, at 164–165, 103 S. Ct. at 2940. The "unitary business/formula apportionment" method

"calculates the local tax base by first defining the scope of the 'unitary business' of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that 'unitary business' between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction." *Id.*, at 165, 103 S. Ct. at 2940.

During the income years at issue in these cases * * * California assessed its corporate franchise tax by employing a "worldwide combined reporting" method. California's scheme required the taxpayer to aggregate the income of all corporate entities composing the unitary business enterprise, including in the aggregation both affiliates operating abroad and those operating within the United States. Having defined the scope of the "unitary business" thus broadly, California used a long-accepted method of apportionment, commonly called the "three-factor" formula, to arrive at the amount of income attributable to the operations of the enterprise in California. Under the three-factor formula, California taxed a percentage of worldwide income equal to the arithmetic average of the proportions of worldwide payroll, property, and sales located inside the State. Cal. Rev. & Tax. Code Ann. § 25128 (West 1992). Thus, if a unitary business had 8% of its payroll, 3% of its property, and 4% of its sales in California, the State took the average—5%—and imposed its tax on that percentage of the business' total income.

[*Id.* at ____, 114 S. Ct. at 2272–2273; fn. refs. omitted.]

### 3. *Worldwide Combined Reporting v. Separate Accounting*

The Court distinguished California's worldwide combined reporting method for apportioning income from the "separate accounting" method employed in the Code:

The corporate income tax imposed by the United States employs a "separate accounting" method, a means of apportioning income among taxing sovereigns used by all major developed nations. In contrast to combined reporting, separate accounting treats each corporate entity discretely for the purpose of determining income tax liability.

Separate accounting poses the risk that a conglomerate will manipulate transfers of value among its components to minimize its total tax liability. To guard against such manipulation, transactions between affiliated cor-

porations must be scrutinized to ensure that they are reported on an "arm's length" basis, i.e., at a price reflecting their true market value. See 26 U.S.C. § 482; Treas. Reg. § 1.482–1T(b), 26 CFR § 1.482–1T(b) (1993). Assuming that all transactions are assigned their arm's length values in the corporate accounts, a jurisdiction using separate accounting taxes corporations that operate within its borders only on the income those corporations recognize on their own books. See *Container Corp., supra,* 463 U.S., at 185, 103 S. Ct., at 2950–51.

[*Id.* at ___, 114 S. Ct. at 2273; fn. refs. omitted.]

### 4. *Vocabulary*

In the ensuing discussion, it will be convenient to have a precise vocabulary to describe or discuss certain aspects of the California tax. To that end, we have adopted, with some modification, certain definitions with regard to the California tax found in the report of petitioners' expert witness, John S. Warren, and appendix A to petitioners' brief. We have included a glossary as an appendix to this report. To introduce the vocabulary that we will use, we will restate some of what we have quoted from *Barclays Bank* concerning the mechanics of the California tax. We have underlined our first usage of those terms that appear in our glossary.

During 1976, 1977, and 1978, for purposes of the *California tax,* to determine the taxable income of corporations doing business within and without the State, California used an equally weighted three-factor *formula apportionment* system based on *apportionment factors* and *worldwide combined reporting.* If a *unitary business* is conducted by a group of related corporations (including foreign corporations), each member of the group having *California apportionment factors* includes with its separate return a *combined report.* The combined report shows the *preapportionment income* of each member of the *combined report group* (whether or not doing business within the State) and the *combined preapportionment income* of all members of the combined report group. It also shows the California apportionment factors and *worldwide apportionment factors* of each member of the group and the aggregate California and worldwide apportionment factors of all members of the group. Based on the combined report, *combined California taxable income* is computed. That amount equals the combined preapportionment income of the members of the combined report group multiplied by an average ratio of the combined report group's total

California apportionment factors to the combined report group's total worldwide apportionment factors (the *apportionment fraction*). In simplified form, the formula is as follows:

$$\begin{array}{c}\text{Combined} \\ \text{California} \\ \text{taxable} \\ \text{income}\end{array} = \begin{array}{c}\text{Combined group's} \\ \text{preapportionment} \\ \text{income}\end{array} \times \frac{\text{Combined group's California factors}}{\text{Combined group's worldwide factors}}$$

### 5. *Intrastate Apportionment*

One aspect of the California tax that was not of concern to the Supreme Court in *Barclays Bank v. Franchise Tax Bd., supra,* is the process referred to as "intrastate apportionment". *Intrastate apportionment* is necessary to determine the *separate California taxable income* and tax liability of each corporation subject to worldwide combined reporting when more than one affiliated corporation subject to such reporting has factors in California. It is necessary to understand the process of intrastate apportionment in order to understand some of petitioners' argument.

The California tax is imposed only on those members of the combined report group with California apportionment factors. If only one member of the combined report group has California apportionment factors, the combined California taxable income is also the separate California taxable income of that member. The member's tax liability is the product of the combined California taxable income and the California tax rate. However, if more than one member of the combined report group has California apportionment factors, California uses intrastate apportionment to determine the separate California taxable income and tax liability of each member that has California apportionment factors. In that situation, the taxable income of each member having California apportionment factors equals the combined preapportionment income of the combined report group multiplied by the ratio of that member's California factors to the combined report group's worldwide apportionment factors. In simplified form, that formula is as follows:

$$\begin{matrix} \text{Separate} \\ \text{California} \\ \text{taxable} \\ \text{income} \end{matrix} = \begin{matrix} \text{Combined group's} \\ \text{preapportionment} \\ \text{income} \end{matrix} \times \frac{\text{Member's California factors}}{\begin{matrix}\text{Combined group's} \\ \text{worldwide factors}\end{matrix}}$$

An example illustrating the application of intrastate apportionment to determine separate California taxable income and tax liability is set forth in the margin.[6]

### 6. *Chevron Combined Report Group*

The *Chevron Combined Report Group* is to be distinguished from the *affiliated group*. We have used the term "affiliated group" to refer to the affiliated group of corporations, of which Chevron is the common parent corporation, making a consolidated return of income for Federal income tax purposes.[7] Generally, only domestic corporations may be members of an affiliated group of corporations for Federal income tax purposes, and the degree of affiliation must be at least 80 percent of stock, by both vote and value. See sec. 1504(a). For purposes of the California tax return and combined report, the Chevron Combined Report Group includes all

---

[6] Assume that four related corporations (P, R, S, and F) are members of a combined report group that conducts a unitary business both within and without California. P, R, and S, are domestic corporations and F is a foreign corporation. P, R, S, and F have the following amounts of preapportionment income and apportionment factors.

| Corporation | Preapportionment income | California factors | Worldwide factors |
|---|---|---|---|
| P | $100 | 20 | 40 |
| R | 25 | 5 | 15 |
| S | 25 | 0 | 15 |
| F | 100 | 0 | 30 |
| Total | 250 | 25 | 100 |

Only those members of the combined report group with California apportionment factors (P and R) have separate California taxable income and California tax liability. The unitary business has combined preapportionment income of $250 and a combined California preapportionment fraction of 25/100. The combined California taxable income is $62.50 ($250 × 25/100), and (at a 10-percent tax rate) the aggregate of the California tax liabilities of P and R is $6.25 ($62.50 × 10 percent).

Under intrastate apportionment, P's apportionment ratio is 20/100. Consequently, P's separate California taxable income is $50 ($250 × 20/100), on which the California tax is $5 ($50 × 10 percent). R's apportionment ratio is 5/100. Consequently, R's separate California taxable income is $12.50 ($250 × 5/100), on which the California tax is $1.25 ($12.50 × 10 percent). The corporations without California factors, S and F, each have an apportionment ratio of 0/100. Consequently, S and F have no taxable income and no California tax liability.

The source of this example is the report of petitioners' expert witness, John S. Warren.

[7] See *supra* note 1.

members of the affiliated group, plus other subsidiaries of Chevron not included in the affiliated group, such as foreign subsidiaries of Chevron operating overseas.

## H. *Separate Reporting Formulary Apportionment*

We are concerned here not only with the California tax deductions of all of petitioners but also with the non-California State tax deductions of one petitioner, Chevron, U.S.A., Inc. Apparently, Chevron, U.S.A., Inc., paid State taxes to States that, while having a formula apportionment system, did not require worldwide combined reporting but, rather, required *separate reporting*. Separate reporting is the practice of certain States to apply the unitary business principle on a separate corporation basis. Regardless of whether the corporation doing business in the taxing State is a member of a group of related corporations, the corporation's taxable income is computed utilizing formula apportionment by including only the preapportionment income and apportionment factors of that corporation. The corporation's State tax liability equals that taxable income multiplied by the State tax rate.

For example, assume that corporation P is engaged in selling in State A and several other States the goods manufactured in another State by its subsidiary, corporation S. P and S have the following amounts of preapportionment income and apportionment factors:

| Corporation | Preapportionment income | State A factors | Worldwide factors |
|---|---|---|---|
| P | $150 | 20 | 40 |
| S | 150 | -0- | 20 |
| Total | 300 | 20 | 60 |

If State A uses a separate reporting method, P's preapportionment income is apportioned to State A in the ratio of P's State A apportionment factors to P's worldwide apportionment factors. As a result, P's State A taxable income is $75 ($150 × $^{20}\!/_{40}$), and (assuming a 10-percent tax rate) P's State A tax liability is $7.50 ($75 × 10 percent). S, which has no State A apportionment factors or State A activities, is not subject to State A tax. State A ignores S's preapportionment income, except, perhaps, if State A

believes the transfer pricing between A and S is inappropriate.[8]

### I. *Separate Reporting Issues; FOGEI, FORI, and NORI Issues*

Apparently, petitioners view the legal issues raised by separate reporting to be no different from the legal issues raised by worldwide combined reporting. Petitioners have not separately identified any legal issues with regard to separate reporting in their briefs, and in setting forth the issues to be decided speak only in terms of the California tax. We shall assume that petitioners have no different or additional arguments to make with regard to separate reporting and shall proceed accordingly. Thus, what we have to say with regard to the California tax applies equally to a tax imposed on the basis of formula apportionment and separate reporting. We have described separate reporting only because the concept will be useful in addressing certain of petitioners' arguments.

We are also concerned today with the allocation and apportionment of foreign source gross income among foreign oil and gas extraction income (FOGEI), foreign oil related income (FORI), and foreign nonoil related income (NORI). See sec. 907. Petitioners concede, however, that "While the section 907 rules have significant tax consequences, they do not raise significant allocation and apportionment issues beyond those raised by section 904." Petitioners' brief does not specifically address FOGEI, FORI, and NORI. Accordingly, what we say about allocation and apportionment with regard to the California tax applies equally to allocation and apportionment with regard to FOGEI, FORI, and NORI.

### J. *Allocation and Apportionment Methods at Issue*

#### 1. *Introduction*

We are concerned here principally with five methods of allocating and apportioning the California tax:

    (1) Petitioners' return method—the gross income method;

    (2) petitioners' refund method—the factor operations method;

---

[8] The source of the example is the report of petitioners' expert witness, John S. Warren.

(3) respondent's notice of deficiency method—the statutory notice method;

(4) respondent's alternative method—the pro rata method;

(5) petitioners' fallback method—the examples method.

## 2. *The Gross Income Method*

### a. *Description*

On the 1977 and 1978 returns, members of the affiliated group allocated and apportioned the California tax between domestic and foreign source gross income pursuant to a method described by petitioners on brief as the "gross income method".

Using intrastate apportionment, the California tax liability of each member of the affiliated group was determined. The domestic and foreign source gross income of each such member also was determined. The California tax liability so determined was then apportioned between such member's domestic and foreign source gross income in proportion to the respective ratios of domestic and foreign source gross income to total gross income.

### b. *Illustration*

Petitioners have presented examples to illustrate the factor operations method, the pro rata method, and the examples method. Those examples, plus our addition of examples to illustrate the gross income method and the statutory notice method, should prove helpful to the reader in understanding those methods. Except where indicated, the following basic facts underlie all of the examples.

State A imposes a corporate income tax based on combined reporting and formula apportionment. P and F are corporations that constitute a State A combined report group. P is engaged in petroleum refining operations in State A. P also carries out "stewardship" operations in State A generating foreign source portfolio dividend income. F is a wholly owned subsidiary of P, with crude oil extraction operations in country F. State A uses a single apportionment factor, labor hours, to apportion taxable income to State A. P expends 45 labor hours, all in State A, and F expends 55 labor hours, all in country F. Applying Federal income tax principles, P earns $800 of both gross and taxable income. Of that

amount, $300 is domestic source gross income, from P's State A refining operations, while $500 is foreign source gross income, consisting of portfolio dividends. P expends 36 labor hours to earn its domestic source gross income and 9 labor hours to earn its foreign source gross income. Applying Federal income tax principles, F earns $1,200 of both gross and taxable income. Thus, in summary:

*State A Combined Report Group*

| Corporation | Gross / taxable income | State A labor hours | Country F labor hours |
|---|---|---|---|
| P | $800 | 45 | - - - |
| F | 1,200 | - - - | 55 |

*Activities of Corporation P*

| Activity generating | Labor hours | Gross taxable income |
|---|---|---|
| Foreign source income | 9 | $500 |
| Domestic source income | 36 | 300 |

State A combined preapportionment income is $2,000 ($1,200 + $800). The State A tax rate is 10 percent. The State A apportionment fraction is 45 percent (45/(45 + 55)). P's State A taxable income is $900 (45% × $2,000). Accordingly, P's State A tax liability is $90 (10% × $900).

Petitioners have not presented us with an example illustrating their gross income method, but we believe that the following fairly illustrates that method. The State A tax of $90 is allocated to P's gross income of $800. It is then apportioned between the foreign and domestic source gross income of P in proportion to the relative amounts of such income; i.e., apportionment to foreign source gross income: $56.25 ($90 × $500/$800); apportionment to domestic source gross income: $33.75 ($90 × $300/$800).

3. *The Factor Operations Method*

a. *Description*

Petitioners have claimed overpayments of tax based on an increase in State and local income and franchise taxes apportioned to domestic source gross income. Apparently, petition-

ers claim such overpayments based on their calculations under a method of allocation and apportionment described by petitioners on brief as the "factor operations method".

Using intrastate apportionment, the California tax liability of each member of the affiliated group is determined. For each member, the California apportionment factors of that member are individually analyzed to determine the gross income (domestic or foreign) that such factors did "generate, have generated, or could reasonably have been expected to generate" (hereafter, just generate or generated). If the gross income generated by the California factors of a member is either entirely domestic source or entirely foreign source, the California tax liability of the member is allocated entirely to domestic or foreign source gross income, as the case may be. If the gross income generated by the California factors of a member is neither entirely domestic source nor entirely foreign source, the California tax liability of the member is apportioned to domestic source gross income based on the ratio of the member's California factors generating domestic source gross income to the member's total California factors, and the California tax liability of the member is apportioned to foreign source gross income based on the ratio of the member's California factors generating foreign source gross income to the member's total California factors.

b. *Illustration*

Petitioners have presented the following to illustrate the factor operations method.

P allocates its State A tax of $90 to the gross income generated by the 45 labor hours expended by P in State A. It apportions its State A tax between foreign source gross income and domestic source gross income in proportion to its State A labor hours expended in generating each such type of gross income. Since 9 out of P's 45 State A labor hours are expended in generating foreign source gross income, $18 of P's $90 State A tax are apportioned to foreign source gross income ($18 = $90 × 9/45). Seventy-two dollars of P's $90 State A tax is apportioned to domestic source gross income ($72 = $90 × 36/45).

## 4. *The Statutory Notice Method*

### a. *Description*

Respondent determined deficiencies in petitioners' Federal income taxes for 1977 and 1978 by way of a statutory notice of deficiency. In determining such deficiencies, respondent applied what, on brief, she has called the "statutory notice method" to allocate and apportion petitioners' deduction for State income and franchise taxes between domestic and foreign source gross income.

As described by respondent, the statutory notice method is performed in four steps. The first two steps consider only the California tax, and we shall restrict our description to those steps.

The first step concerns dividend income and proceeds as follows: the combined report is examined to determine combined preapportionment income. Dividend income is identified and divided into (1) foreign source *portfolio dividends* and (2) other dividends. A portion of the affiliated group's deduction for California tax is allocated to a class of gross income consisting of foreign source portfolio dividends by multiplying the sum of such dividends by (1) the apportionment fraction and (2) the California tax rate.

The second step proceeds as follows: both foreign and domestic source portfolio dividends are subtracted from the preapportionment income of each member. On a member-by-member basis, the remaining preapportionment income is compared to the member's Federal taxable income (less foreign source portfolio dividends) reported on the separate corporation schedules to the corresponding return of the affiliated group. The excess, if any, of each member's preapportionment income (less both foreign and domestic source portfolio dividends) over reported Federal domestic source taxable income is added together and multiplied by (1) the apportionment fraction and (2) the California tax rate.[9] The product is the amount of the deduction for California tax

---

[9] The relationship of the operations described in this sentence to the operation described in the previous sentence is unclear. Respondent has not explained how, if at all, the operations described in this sentence are dependent in some way on the comparison made in the previous sentence. Logically, the operations described in this sentence can stand on their own, and we view them in that light.

apportioned to foreign source gross income other than foreign source portfolio dividends.

For each member of the affiliated group, the sum of the results of steps (1) and (2) is the amount of California tax apportioned to foreign source gross income.

b. *Illustration*

Neither petitioners nor respondent have presented us with an example illustrating respondent's statutory notice method. Nevertheless, we believe that the following allocation and apportionment fairly illustrates that method. To simplify matters, we have assumed that F is a division, rather than a subsidiary, of P.

First step: Foreign source portfolio dividends are identified: $500. Such dividends are multiplied by (1) the State A apportionment fraction (45 percent) and (2) the State A tax rate (10 percent): $500 × 45% × 10% = $22.50. The product ($22.50) is that portion of P's deduction for State A tax ($90) allocated to a class of gross income consisting of foreign source portfolio dividends.

Second step: Portfolio dividends are subtracted from preapportionment income: ($1,200 + $300 + $500) − $500 = $1,500. Domestic source taxable income is subtracted from the difference: $1,500 − $300 = $1,200. That difference ($1,200) is multiplied by (1) the State A apportionment fraction (45 percent) and (2) the State A tax rate (10 percent): $1,200 × 45% × 10% = $54. The product ($54) is that portion of P's deduction for State A tax ($90) apportioned to foreign source gross income other than foreign source portfolio dividends.

The sum of the two steps is the amount of State A tax apportioned to foreign source gross income: $22.50 + $54 = $76.50. By elimination, the amount of State A tax apportioned to domestic source gross income is $13.50 ($90.00 − $76.50 = $13.50).

5. *The Pro Rata Method*

a. *Description*

The pro rata method is an alternative method set forth by respondent. The principal difference between the statutory notice method and the pro rata method is that the pro rata

method does not make a separate allocation of a portion of petitioners' deduction for California tax to a class of gross income consisting solely of foreign source portfolio dividend income. Respondent claims that, under the statutory notice method, she made such a separate allocation pursuant to the dividend rule of section 1.861–8(e)(6)(i). She sets forth the pro rata method in case we hold that it is impermissible retroactively to apply such dividend rule to petitioners.

Respondent summarizes the pro rata method in approximately the following terms: The pro rata method allocates petitioners' entire California tax deduction to the class of gross income consisting of the income taken into account in computing combined preapportionment income. As that class of income includes both domestic and foreign source gross income, the deduction then is apportioned between domestic and foreign source gross income based on the ratios, respectively, of foreign and domestic source preapportionment income to preapportionment income from all sources.

b. *Illustration*

Petitioners have presented the following example to illustrate the pro rata method (which example reaches the same result as under the statutory notice method).

P's State A tax ($90) is allocated to all of P's State A combined preapportionment income ($2,000). P's State A tax is then apportioned to foreign source gross income based on the ratio of foreign source combined preapportionment income to worldwide combined preapportionment income. Thus, 85 percent of P's $90 State A tax is apportioned to foreign source gross income (85% = ($1,200 + $500)/$1,200 + $800). The amount of State A tax apportioned to foreign source gross income is $76.50 ($76.50 = 85% × $90). The amount of State A tax apportioned to domestic source gross income is $13.50 ($13.50 = 15% × $90).

6. *The Examples Method*

a. *Description*

Petitioners have a fallback position (the examples method) should we reject all of their other arguments. They argue that respondent's methods of allocation and apportionment (the statutory notice and pro rata method) impermissibly

deviate from examples (25) through (32) of section 1.861–8(g) (the 8(g) examples). Petitioners claim: "An underlying principle of these examples is that State Tax is allocated and apportioned to foreign source gross income only when the sum of a corporation's state taxable income exceeds its federal domestic source taxable income." Petitioners claim the right to rely on the principles underlying the 8(g) examples.

b. *Illustration*

Petitioners have presented the following example to illustrate the principles they believe underlie the 8(g) examples.

P's State A taxable income ($900) exceeds its taxable income from domestic sources determined for purposes of the Federal income tax ($300). As a result, it is presumed that State A income tax is imposed on $600 of foreign source income ($600 = $900 − $300). P's State A tax is apportioned $60 ($60 = $90 × ($900 − $300)/$900)) to foreign source gross income and $30 ($30 = ($90 × ($900 − $600)/$900)) to domestic source gross income. Petitioners cite examples (17), (25), and (29) of section 1.861–8(g) for that result.

7. *Comparison*

The following table summarizes allocation and apportionment of the $90 of State A tax in the five illustrations set forth:

*Allocation and Apportionment of State A Tax*

| | Gross income method | Factor operations method | Statutory notice method | Pro rata method | Examples method |
|---|---|---|---|---|---|
| Foreign source gross income | $56.25 | $18 | $76.50 | $76.50 | $60 |
| Domestic source gross income | 33.75 | 72 | 13.50 | 13.50 | 30 |

III. *Petitioners' Methods Are Contrary to the Regulations*

A. *Introduction*

We must determine whether petitioners' methods of allocation and apportionment (the gross income and factor operations methods) are contrary to the regulations. Before turning to the regulations, however, it may be helpful to focus on the principles of allocation and apportionment underlying

petitioners' methods. Petitioners characterize their methods as "separate corporation" methods. As we understand that characterization, once the California tax liability of a particular member of the affiliated group is determined under intrastate apportionment, petitioners would look to certain factors related to that member as the basis, first, for allocating and, second, if necessary, for apportioning such California tax liability. With respect to petitioners' gross income method, that means that, in a State imposing combined reporting and formula apportionment, the State tax of a corporation with local apportionment factors is allocated to the gross income of that corporation determined on a stand-alone (*separate accounting*) basis. Only if such gross income includes foreign source gross income is the State tax considered allocable to a class of gross income that includes foreign source gross income. If such gross income includes both foreign and domestic source gross income, then apportionment is accomplished on the basis of the relative amounts of foreign and domestic source gross income. Thus, consider the example presented in section II.J.2.b., *supra*. P's State A tax is $90, its State A taxable income is $900, and its gross income determined on a separate accounting basis (its separate accounting income) is $800. P's State A tax of $90 is allocated to its separate accounting income of $800. Since such income includes foreign source gross income of $500, the State A tax is considered allocable to a class of gross income that includes foreign source gross income. The State A tax is apportioned based on the relative amounts of P's foreign and domestic source gross income.

Under petitioners' factor operations method, neither State A taxable income nor P's separate accounting income plays any role in allocation (or apportionment) of the State A tax. Only State A labor hours (the only State A apportionment factor) plays any role. Thus, petitioners describe the factor operations method not only as being a separate corporation method but also as being "causation" based rather than "computation" based. The first step under petitioners's factor operations method is to consider the gross income that the local apportionment factors could or did generate. Only if gross income so determined includes foreign source gross income is the State tax considered allocable to a class of gross income that includes foreign source gross income.

Apportionment, if necessary, is on the basis of the sources of the income generated by the local apportionment factors. In the example presented in section II.J.3.b., *supra,* the $90 of State A tax is allocated to P's 45 State A labor hours. Since those labor hours produce both foreign and domestic source gross income, the State A tax is apportioned based on the relative number of labor hours devoted to each such source of income.

We are dealing here principally with the California tax, which is based on combined reporting and formula apportionment. We must determine whether section 1.861–8(e)(6)(i) countenances the allocation (and apportionment) of that tax based on either separate accounting income (under petitioners' gross income method) or apportionment factors (under petitioners' factor operations method).

## B. *What Do the Regulations Provide?*

We have described in some detail section 1.861–8(e)(6)(i). See sec. II.E.3.a., *supra.* Petitioners claim that "Section 1.861–8(e)(6)(i) implements section 862(b) in vague terms." We do not agree. We have set forth relevant portions of section 1.861–8(e)(6) in an appendix, and it here serves to set forth only a portion thereof:

> The deduction for state, local, and foreign income, war profits and excess profits taxes ("state income taxes") allowed by section 164 shall be considered definitely related and allocable to the gross income with respect to which such state income taxes are imposed. * * * In allocating and apportioning the deduction for state income tax * * *, the income upon which the state income tax is imposed is determined by reference to the law of the jurisdiction imposing the tax. Thus, if a state attributes taxable income to a corporate taxpayer by applying an apportionment formula that takes into consideration the income and factors of one or more corporations related by ownership to the corporate taxpayer and engaging in activities related to the business of the corporate taxpayer, then the income so attributed is the income upon which the state income tax is imposed. If the income so attributed to the corporate taxpayer includes foreign source income, then * * * the taxpayer's deduction for state income tax will be considered definitely related and allocable to a class of gross income that includes the statutory grouping of foreign source income. * * * [Sec. 1.861–8(e)(6)(i).]

Section 1.861–8(e)(6)(i) is explicit in stating that the deduction for State income taxes is allocable to the gross income with respect to which such taxes are imposed. Section 1.861–

8(e)(6)(i) also is explicit in stating that the income upon which a State tax is imposed is determined by reference to the law of the jurisdiction imposing the tax (and not with reference to Federal tax principles). Thus, e.g., if a State tax is imposed in part on foreign source income (determined under the law of the taxing jurisdiction), then the taxpayer's deduction for such State tax is considered definitely related and allocable to a class of gross income that includes foreign source income. It is true that section 1.861–8(e)(6)(i) does not specify how to determine whether a State tax is imposed on foreign source income. Nevertheless, section 1.861–8(e)(6)(i) does specify that, if a State attributes taxable income to a corporate taxpayer under a system applying combined reporting and formula apportionment, the income so determined is the income upon which the State tax is imposed. If the income so determined includes foreign source income, then section 1.861–8(e)(6)(i) specifies that the taxpayer's deduction for the State income tax is considered definitely related and allocable to a class of gross income that includes foreign source gross income.

To satisfy section 1.861–8(e)(6)(i), any method of allocation and apportionment must begin by determining whether the income on which the State tax is imposed (*State taxable income*) includes foreign source income. If State taxable income does include foreign source income, a satisfactory method must allocate the deduction for State income tax to a class of gross income that includes foreign source gross income. (Apportionment is only necessary if it is determined that the class of gross income also includes domestic source gross income. See secs. 1.861–8(a)(2), 1.861–8T(c)(1).) A method of allocation and apportionment fails to satisfy section 1.861–8(e)(6)(i) if the method fails to allocate State tax by reference to State taxable income. Necessarily, in a State applying combined reporting and formula apportionment, that means that a satisfactory method must begin with State taxable income so determined.

As stated, we are dealing here principally with the California tax, which is based on combined reporting and formula apportionment. In the immediately preceding section of this report, we focused on the mechanics of allocation (and apportionment) under petitioners' gross income and factor operations methods. We concluded that, in the context of State

A's tax, an income tax based on combined reporting and formula apportionment, petitioner's gross income method allocates the State A tax to separate accounting income (P's gross income for Federal income tax purposes), while petitioners' factor operations method allocates the State A tax entirely to income generated by P's State A labor hours (i.e., P's State A apportionment factor). Under neither method do petitioners consider State A taxable income to determine whether State A is imposing a tax on foreign source income. Petitioners have not convinced us that either of their methods presents a permissible interpretation of section 1.861–8(e)(6)(i). As we have stated, it is true that section 1.861–8(e)(6)(i) does not specify how to determine whether a State tax is imposed on foreign source income. Nevertheless, in the case of a State tax based on combined reporting and formula apportionment, section 1.861–8(e)(6)(i) is clear that such determination must begin with a consideration of whether State taxable income includes foreign source income. Otherwise, the method will fail to allocate the State tax by reference to State taxable income. Since neither of petitioners' methods begins with State taxable income, neither method is permissible under section 1.861–8(e)(6)(i).

## C. *Conclusion*

Petitioners' gross income and factor operations methods are contrary to section 1.861–8(e)(6)(i).

## IV. *Section 1.861–8(e)(6)(i) Is Not Being Applied in an Impermissible Retroactive Fashion*

### A. *Petitioners' Argument*

Petitioners claim that section 1.861–8(e)(6)(i) is being applied to them in an impermissible retroactive fashion. Petitioners' argument runs as follows: when the 1977 and 1978 returns were filed, section 1.861–8(a)(2) (1977) and the consolidated return regulations "required separate corporation allocation and apportionment of deductions". Respondent is now attempting to impose on them a "group" method, which, irrespective of respondent's authority to do so on a

prospective basis, respondent may not do on a retroactive basis.[10]

Apparently, by "group" method, petitioners mean a method of allocation and apportionment that allocates and apportions the State tax of a member of a combined report group on the basis of factors extrinsic to that member. Thus, e.g., petitioners point out that, under respondent's pro rata method, respondent first allocates the California tax to combined preapportionment income and then apportions the California tax on the basis of the sources of that income. Combined preapportionment income includes the aggregate preapportionment incomes of all members of the combined report group. For that reason, petitioners argue that the pro rata method is a "group" method.

Petitioners conclude that, if section 1.861–8(e)(6)(i) is being applied in an impermissible retroactive manner (by applying to them a "group" method), and if section 1.861–8(a)(2) (1977) and the consolidated return regulations require separate corporation allocation and apportionment, then their factor operations method or, alternatively, their gross income method complies with the regulations, and we should sustain it.

Petitioners cite *Anderson, Clayton & Co. v. United States,* 562 F.2d 972 (5th Cir. 1977), as a case providing a framework for determining whether the Secretary of the Treasury has abused his power to promulgate retroactive regulations.

We deal with petitioners' retroactivity argument before discussing the validity of section 1.861–8(e)(6)(i) since, if petitioners' retroactivity argument prevails, the validity of section 1.861–8(e)(6)(i) is a moot question.

## B. *Analysis*

We need discuss in detail neither section 1.861–8(a)(2) (1977) nor the consolidated return regulations. Indeed, the rule of section 1.861–8(a)(2) (1977) that petitioners speak of is preserved in section 1.861–8T(a)(2).[11] Petitioners' com-

---

[10] Petitioners include as group methods not only respondent's statutory notice and pro rata methods but also the examples method, if the examples method were to be imposed on a group basis.

[11] In pertinent part, sec. 1.861–8T(a)(2) provides:

If an affiliated group of corporations joins in filing a consolidated return under section 1501, the provisions of this section are to be applied separately to each member in that affiliated

plaint is not with section 1.861–8T(a)(2) or the consolidated return regulations but with section 1.861–8(e)(6)(i). We disagree with petitioners that an impermissible change has been made in section 1.861–8(e)(6) (1977).

We assume that, by "separate corporation allocation and apportionment", petitioners mean the same thing as the "separate corporation" methodology they have advanced. We have already discussed the inadequacy of petitioners' methods under section 1.861–8(e)(6)(i). See sec. III.B, *supra.* We have concluded that, since petitioners' methods fail to allocate State tax by reference to State taxable income, they are impermissible methods under the regulations. See sec. III.C., *supra.* Petitioners' methods likewise would have been impermissible under section 1.861–8(e)(6) (1977).

We have set forth the text of section 1.861–8(e)(6) (1977) in section II.E.1., *supra,* but repeat it here for convenience.

The deduction for State, local, and foreign income, war profits, and excess profits taxes allowed by sec. 164 shall be considered definitely related and allocable to the gross income with respect to which such taxes are imposed. For example, if a domestic corporation is subject to State income tax and the amount of such State income tax is imposed in part on the amount of foreign source income, that part of such State income tax attributable to foreign source income is definitely related and allocable to foreign source gross income. Examples (25) and (26) of paragraph (g) of this section illustrate the application of this subparagraph (6).

The first two sentences are virtually the same as the first two sentences of section 1.861–8(e)(6)(i). Examples (25) and (26) are virtually the same as examples (25) and (26) of section 1.861–8(g). It is true that section 1.861–8(e)(6)(i) explicitly states that, if State taxable income is attributed to a corporate taxpayer under a system of formula apportionment and combined reporting, State taxable income so determined is the income on which the State tax is imposed (and the income that must be examined to determine whether the State tax is imposed on foreign source income). Nevertheless, that rule is implicit in section 1.861–8(e)(6) (1977) and examples (25) and (26) of section 1.861–8(g) (1977). The examples concern a State in which taxable income is attributed to a corporate taxpayer under a system of formula apportionment

---

group for purposes of determining such member's taxable income, * * *

Sec. 1.861–8T(a)(2) applies for taxable years beginning after 1986. Sec. 1.861–8T(h).

and *separate* reporting. We do not understand petitioners' argument to be that the distinction between separate reporting and combined reporting is the impermissible change that was made in the regulations. Moreover, it must be kept in mind that the examples are *only* examples. The exemplified rule must be found somewhere else. We are satisfied that the first sentence of section 1.861–8(e)(6) (1977) is a sufficient basis on which to rest the rule that the income attributed to a corporate taxpayer under a State system of combined reporting and formula apportionment is the State taxable income on which the State tax is imposed, and the income by reference to which the State tax must be apportioned. Undoubtedly, under a system of combined reporting, that means that income of a corporation other than the corporate taxpayer in question may be taken into account in determining State taxable income. In petitioners' terms, that is a "group" method. Since the first sentence of section 1.861–8(e)(6) (1977) is virtually the same as the first sentence of section 1.861–8(e)(6)(i), we see no change in the pertinent rule and no change on which petitioners can rely.[12]

In *Anderson, Clayton & Co. v. United States,* 562 F.2d at 981, the Court of Appeals for the Fifth Circuit identified a list of "considerations that are relevant to a court in reviewing the Secretary's exercise of his discretionary power to adopt retroactive regulations." First on the list is "whether or to what extent the taxpayer justifiably relied on settled prior law or policy and whether or to what extent the putatively retroactive regulation alters the law". *Id.* Petitioners have failed to convince us that there has been any change in the law. The Secretary has broad authority under section 7805(b) to establish the extent to which a regulation will be applied only on a prospective basis. Indeed, the rules of section 1.861–8(e)(6)(i) are effective for taxable years beginning after 1976. Sec. 1.861–8(e)(6)(iii). We do not think that the language of section 1.861–8(e)(6)(i) dealing with combined reporting effects a material change in that paragraph. To the extent that it does work a change, we believe that the Secretary was well within his power under section 7805(b).

---

[12] Petitioners cite Rev. Rul. 72–281, 1972–1 C.B. 285, in support of their "separate corporation" method of allocation. Rev. Rul 72–281 is inapposite. It was promulgated before sec. 1.861–8(e)(6) (1977) was promulgated and, in any event, deals with deductions, unlike State income taxes, that are not directly allocable to a class of gross income.

## C. *Respondent's Pro Rata Method*

Respondent has set forth her pro rata method as an alternative to her statutory notice method in case we hold that the statutory notice method is invalid to the extent that it makes a separate allocation of California tax to foreign source portfolio dividends. Section 1.861–8(e)(6) (1977) did not contain a specific rule dealing with portfolio dividends. Petitioners, however, have not distinguished between respondent's statutory notice and pro rata methods in challenging respondent's authority to impose any "group" method retroactively. Since petitioners have not made any separate objection to the portfolio dividend rule, we will not separately address it. Cf., e.g., *Remuzzi v. Commissioner,* T.C. Memo. 1988–8 (issue not considered by petitioners in briefs deemed conceded), affd. without published opinion 867 F.2d 609 (4th Cir. 1989).

## D. *Conclusion*

Section 1.861–8(e)(6)(i) is not being applied in an impermissible retroactive fashion.

## V. *Section 1.861–8(e)(6)(i) Is Valid*

### A. *Petitioners' Arguments*

Petitioners argue, first, that, if section 1.861–8(e)(6)(i) were interpreted to require a "group" method, such requirement would go beyond respondent's authority and, accordingly, would be invalid. Petitioners claim: "a separate corporation method is required by the statute, the consolidated return regulations, and the general rule of §§ 1.861–8(a)(2) (1977), and 1.861–8T(a)(2). A separate corporation method also follows from cost accounting and economic principles."

Petitioners also argue that, unless section 1.861–8(e)(6)(i) is interpreted to require the factor operations method, the section is invalid: "Only the Factor-Operations Method achieves the purpose of section 862(b)." Petitioners' argument runs as follows:

(i) causation, not computation, governs the allocation and apportionment of State Tax; and (ii) in-state operations cause State Tax. It follows that State Tax should be allocated entirely to income generated by in-state operations. It also follows that the Tax so allocated should be apportioned

between domestic and foreign source income in proportion to the Apportionment Factors used in the operations generating each type of income. * * * [Ps' Brief at 110.]

## B. *Analysis*

### 1. *Introduction*

Section 1.861–8(e)(6)(i) requires that a deduction for State tax must be allocated by reference to State taxable income. See sec. III.B., *supra*. Since, in States applying formula apportionment *and* combined reporting (such as California), State taxable income will take account of income of all members of the combined report group, section 1.861–8(e)(6)(i) imposes what we believe petitioners would describe as a "group" method. Moreover, in any State applying formula apportionment, a corporation's State taxable income will only by coincidence be identical with the income generated by the in-State operations of that corporation if the corporation (1) is a member of a combined report group or (2) has any out-of-State operations. Thus, we must face squarely petitioners' arguments with regard to the validity of the regulation. We have set forth previously the standard that we must apply. Sec. II.A., *supra*. In short, we must uphold the regulation if we find it to "'implements the congressional mandate in some reasonable manner'". *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982) (quoting *United States v. Correll*, 389 U.S. 299, 307 (1967)). We must inquire first whether Congress has unambiguously expressed its intent to prohibit the allocation of State tax under a method that takes into account combined reporting and income other than that generated by in-State operations. See *NationsBank v. Variable Annuity Life Ins. Co.*, 513 U.S. ____, 115 S. Ct. 810 (1995). If we fail to find such unambiguously expressed intent, we then must inquire as to whether the approach of the regulation is based on a permissible construction of the statute. *Id.*

### 2. *Congress' Intent Is Not Unambiguously Expressed*

The statute requires merely that, with regard to domestic and foreign source gross income, respectively, there be deducted "the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which cannot definitely

be allocated to some item or class of gross income" in order to determine the taxable income from such sources. Secs. 861(b), 862(b). Prior to the promulgation of section 1.861–8(e)(6) (1977), we held that the statute implied that the allocation of a deduction to income was proper only if the deduction definitely related to that income in the degree contemplated by the statute. *Grunebaum v. Commissioner,* 50 T.C. 710 (1968), affd. 420 F.2d 332 (2d Cir. 1970). The statute does not provide specific guidance as to how the relationship of a deduction to income should be determined. It is clear to us that Congress has not "unambiguously" expressed its intent with regard to that question. We thus must determine whether section 1.861–8(e)(6)(i) is based on a reasonable construction of the statute.

3. *Section 1.861–8(e)(6)(i) Contains a Reasonable Construction of the Statute*

a. *Factual Relationship Determinative*

The general rule underlying section 1.861–8 is that allocations "are made on the basis of the factual relationship of deductions to gross income." Sec. 1.861–8(a)(2). Each deduction is allocated to the class of gross income to which it is "definitely related". Sec. 1.861–8(b)(1). Generally, a deduction is considered definitely related to a class of gross income if it is incurred "as a result of, or incident to, an activity or in connection with property from which such class of gross income is derived." Sec. 1.861–8(b)(2). A different rule applies to State income taxes: the deduction for State income taxes is considered definitely related to, and therefore allocable to, the gross income with respect to which such State taxes are imposed. Sec. 1.861–8(e)(6)(i); see sec. 1.861–8(b)(4).

There is no explanation in the regulations as to why a different rule applies to the deduction of State income taxes. It may be that the drafters of the regulation considered a State income tax to be an aftercost of earning income. While some deductions generate income, other deductions are generated by income. Income taxes are one such aftercost of income.[13]

---

[13] The term "aftercost" is borrowed from accounting literature, where it is used to describe costs that are generated by income. See Mautz, "Accounting Concepts and Principles and Auditing Standards and Opinions", in Handbook of Modern Accounting 1–13 (Davidson & Weil eds., 3d ed. 1983) ("revenue may be causal of some expenses").

The drafters may have wished to emphasize the relationship of the tax to the income earned rather than the relationship of the tax to the activities generating that income. (Indeed, such later relationship is what petitioners think is the proper relationship: "causation rather than computation".) In any event, it is clear that section 1.861–8(e)(6)(i) requires the allocation of a State income tax deduction to the gross income with respect to which such tax is imposed, rather than to the activities giving rise to the income.

It is also clear that the drafters of the regulations intended that the required factual relationship of State tax deduction to gross income be determined *not* by reference directly to the gross income subject to State taxation *but,* rather, indirectly, by reference to the taxable income subject to State taxation (i.e., State taxable income). See *supra* sec. III.B. If State taxable income includes exclusively domestic source income, then the State tax deduction is considered definitely related and allocable to a class of gross income that does not include foreign source gross income. Conversely, if State taxable income does not include exclusively domestic source income, then the State tax deduction is considered definitely related and allocable to a class of gross income that does include foreign source gross income. Only if State taxable income includes *both* foreign *and* domestic source gross income is apportionment necessary, because the State tax deduction is considered definitely related and allocable to a class of gross income that includes *both* foreign *and* domestic source gross income. The suggestion of section 1.861–8(e)(6)(i), borne out in examples (25) through (32) of section 1.861–8(g), is that, in such latter case, some portion of the State tax deduction must be apportioned to foreign source gross income.

The factual relationship that petitioners complain of is the factual relationship established by section 1.861–8(e)(6)(i) between the deduction for State income taxes and the source of the income subject to State tax. Petitioners' complaint is that it is unreasonable, given the congressional mandate, to allocate (and, if necessary, apportion) the State income tax deduction on the basis of the sources of State taxable income. As petitioners would put it: "causation, not computation, governs the allocation and apportionment of State Tax".

b. *Congressional Mandate*

The congressional mandate is to determine both a taxpayer's entire taxable income and his foreign source taxable income for purposes of computing the section 904 limit on foreign tax credits. The determination of foreign source taxable income must be accurate to prevent double taxation. Necessarily, the allocation and apportionment of State income taxes must be accurate for the same reason.

In section II.G., *supra,* we have described in some detail the California tax and how the method of apportioning income under the California tax (combined reporting and formula apportionment) differs from the separate accounting method for apportioning income generally employed under the Code. We have quoted the Supreme Court's analysis that formula apportionment "'rejects geographical or transactional accounting'". *Barclays Bank v. Franchise Tax Bd.,* 512 U.S. at ___, 114 S. Ct. at 2272 (quoting *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 165 (1983)). In *Container Corp. of America,* the Supreme Court stated that formula apportionment "is a very different approach" from geographical or transactional accounting to the problem of deriving locally taxable income. *Id.* at 164–165. Indeed, the Supreme Court has recognized that, under formula apportionment, dollars of foreign and domestic source income are, without differentiation as to geographic source, subject to State taxation:

The unitary business/formula apportionment method * * * rejects geographical or transactional accounting, and instead calculates the local tax base by first defining the scope of the "unitary business" of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that "unitary business" between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction. * * * [*Id.* at 165.]

Nevertheless, it is clear that geography is not irrelevant to formula apportionment. Indeed, the geography of a corporation's activities is the key to apportionment. What is of limited importance to formula apportionment is the geography of income realization, or, to put it in Federal income tax terms, the "source", either domestic or foreign, of a unitary business' income. Despite such geographical

nondifferentiation as to source for purposes of formula apportionment, it is *precisely* a geographical accounting that is required for purposes of section 904. The task is to apportion between domestic and foreign sources a tax that is levied without distinction as to source of income.[14]

In *Barclays Bank,* the Supreme Court stated that

when a business enterprise operates in more than one taxing jurisdiction, arriving at "precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Container Corp.,* 463 U.S. at 164. Every method of allocation devised involves some degree of arbitrariness. See *id.,* at 182 * * *. [*Barclays Bank v. Franchise Tax Bd.,* 512 U.S. at ____, 114 S. Ct. at 2272.]

Petitioners have not convinced us that allocating and apportioning the California tax on the basis of the sources of State taxable income results in an unreasonable amount of California tax being apportioned to foreign source income for purposes of the foreign tax credit.

### c. *Historical Perspective*

The requirement that a deduction for income taxes should be allocated to the income with respect to which the taxes are imposed has long been a part of Federal income tax law. This Court approved the requirement almost 60 years ago.

In *Astor v. Commissioner,* 31 B.T.A. 1009, 1012 (1935), the taxpayer, a nonresident alien, contended in effect that no part of a deduction for a British income tax should be allocated to interest income that was tax exempt for Federal income tax purposes. The Court applied the predecessor of section 861(b) and concluded that the British tax was imposed in part on the interest income and, to that extent, was allocable to it. No deduction was allowed for that portion of the British tax in computing the taxpayer's net income from sources within the United States.

Respondent has long been guided by the notion that a deduction for income tax should be allocated to the income with respect to which the tax is imposed. For example in

---

[14] There is of course some tension between the notion that a State may not constitutionally tax value earned outside its borders, *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 164 (1982), and the notion that, for Federal income tax purposes, some or all of the State income tax may be attributed to gross income sourced outside of the United States. Nevertheless, petitioners have not argued that a State income tax may not constitutionally be allocated to a class of gross income that includes foreign source gross income. Indeed, the fight here is over the proper method of allocating (and, if necessary, apportioning) State tax.

G.C.M. 3179, VII–1 C.B. 240, 241 (1928), respondent took the position that

taxes (as deductible expenses) are to be apportioned or allocated to those items of gross income to which they relate in all cases where the actual amount of tax paid with respect to those particular items of gross income can be determined. * * *

The memorandum considered the tax law itself, outlines of the tax law prepared by its administrators, tax forms and instructions, texts, and case law to be relevant in determining the income with respect to which the tax was imposed.[15]

Section 1.861–8(e)(6)(i) therefore embodies a longstanding rule. That is some evidence that the regulation carries out the congressional mandate in a proper manner. *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 477 (1979).

### d. *A Reasonable Scheme of Allocation and Apportionment*

#### (1) *A Commonsense Dichotomy*

A dichotomy is apparent in section 1.861–8(e)(6)(i). If the State excludes foreign source income from its tax base (i.e., State taxable income), then the resulting tax deduction is allocable solely to domestic source gross income. See *supra* secs. III.B. and V.B.3.a.; sec. 1.861–8(g), *Example (26)*. If the State tax base includes foreign source income, then the resulting tax deduction is allocable at least partially to foreign source income. See *supra* secs. III.B. and V.B.3.a.; sec. 1.861–8(g), *Example (25)*. Given the congressional mandate, the dichotomy thus established is not unreasonable. The first half of it, at least, seems only common sense: a State income tax deduction is not allocable at all to foreign source income if the State does not tax foreign source income.

#### (2) *One Reasonable Approach to Allocation*

If the State tax base includes foreign source income, then, under section 1.861–8(e)(6)(i), the resulting tax deduction is allocable at least partially to foreign source income. As stated, petitioners' complaint is that it is unreasonable to

---

[15] The interpretation of the British law involved in the memorandum subsequently was questioned. See *Biddle v. Commissioner,* 302 U.S. 573, 582 (1938). However, the memorandum's fundamental approach, i.e., allocating a deduction for taxes to the income giving rise to compute the tax, was not challenged.

allocate (and, if necessary, apportion) a State income tax deduction on the basis of the sources of State taxable income. Petitioners' governing principle is that "causation, not computation, governs the allocation of State Tax":

State Tax is allocated entirely to income generated by in-state operations; once so allocated, the Tax is apportioned between foreign and domestic source income in proportion to the in-state Apportionment Factors used to generate each type of income.

Petitioner's claim: "Only the Factor-Operations Method achieves the purpose of section 862(b)."

In effect, petitioners have set forth causation as the exclusive test of a reasonable interpretation of section 862(b):

Petitioners have demonstrated that the causation-based Factor-Operations Method is proper and that respondent's computation-based Proportionate Income and Example Methods are improper. The Factor-Operations Method recognizes the causal relationship between petitioners' in-state operations and State Tax, follows cost accounting, economic and government contracting principles, accurately determines net income, and facilitates rational decision-making and proper cost recovery. The Factor-Operations Method, therefore, achieves the purpose of section 862(b) by allocating and apportioning to foreign source gross income the portion of petitioners' State Tax that is a cost of earning that income.

Respondent's methods confuse computation with causation and are contrary to cost accounting, economic and government contracting principles. They improperly allocate and apportion to foreign source gross income State Tax that is a cost of earning domestic rather than foreign source income. These methods, therefore, inaccurately determine foreign source taxable income and frustrate the purpose of section 862(b).

Thus, respondent's methods have no reasonable basis. Merely observing that income is used to compute State Tax does not justify computation-based allocation and apportionment of State Tax. * * *

We cannot agree that causation, in petitioners' sense, in all events, defines reasonableness. We have found as facts that, during the years in issue, Chevron received dividends from P.T. Caltex Pacifica Indonesia (Indonesia), a corporation 50 percent of the stock of which was owned by Chevron, and that Chevron Oceanic received dividends from Arabian American Oil Co. (Arabian American), a corporation approximately 30 percent of the stock of which was owned by Chevron Oceanic. Let us assume that Chevron's and Chevron Oceanic's stewardship operations with respect to Indonesia and Arabian American, respectively, were minimal, in each case constituting only 5 percent of each corporation's California oper-

ations. Let us also assume that substantial dividends were received from Indonesia and Arabian American and that, for the income year in question, only a small amount of gross income from domestic sources was received by either Chevron or Chevron Oceanic. Under petitioners' causation-based factor operations method, only 5 percent of each of Chevron's and Chevron Oceanic's California tax would be attributable to foreign source gross income. We cannot accept that result as the *only* reasonable result. We cannot escape the fact that, at least under the facts of our hypothetical situation, Chevron and Chevron Oceanic paid a real California tax, now, on real income, which, for Federal income tax purposes, was foreign sourced. We think that the dividend income in question caused the tax, and the tax is reasonably allocable to it. We reject petitioners' definition of causation as unduly narrow.[16] If causation is the test, then we find that the regulations are causation based. If causation defines reasonableness, then we find section 1.861–8(e)(6)(i) to be reasonable.

The basis for allocation found in section 1.861–8(e)(6)(i) (State taxable income) may not be the only reasonable basis on which to allocate the deduction for State income taxes. In any State using formula apportionment, if we hold preapportionment income steady and shift apportionment factors out of (or into) the State, we will decrease (or increase) State taxable income, the State income tax, and the State income tax deduction proportionately. Petitioners think it reasonable to allocate the California tax to California apportionment factors and to apportion it among those factors on the basis of whether a particular factor gives rise to foreign or domestic source income. We need not decide, however, whether apportionment factors, or any other basis of allocation, is a more reasonable basis for allocation than the

---

[16] In note 13 *supra,* we cited Mautz, "Accounting Concepts and Practices and Auditing Standards and Opinions", in Handbook of Modern Accounting 1–13 (Davidson & Weil eds., 3d ed. 1983), for a definition of the term "aftercost". It would do well at this point to set out the whole paragraph from which we drew that definition:

In some cases there is a causal relationship between efforts (expenses) and accomplishments (revenues). Note that this is not a cause-and-effect relationship in the sense that certain causes always bring about certain effects. Rather, expenses are incurred with the intent and often the effect of producing revenues, but there is not absolute assurance that revenue will follow. *In the same sense, revenue may be causal of some expenses.* If, for example, the company includes a guarantee or service agreement of some kind in its sales agreement, certain aftercosts may almost automatically follow the production of revenue. Other items of expense have no such causal relationship; their only connection with revenue is the time relationship, that is, that both occurred within the same accounting period. [*Id.* at 1–12 to 1–13; emphasis added.]

basis (State taxable income) found in section 1.861–8(e)(6)(i). It is sufficient that we find that section 1.861–8(e)(6)(i) contains a reasonable basis for allocating the deduction for California tax for purposes of section 904. *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,* 467 U.S. 837, 843 n.11 (1984); *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 488 (1979) ("The choice among reasonable interpretations is for the Commissioner, not the courts."); cf. *Perkin-Elmer Corp. v. Commissioner,* 103 T.C. 464 (1994) (sales method for apportionment research and development expenditures incorporated in section 1.861–8(e)(3)(i) is not unreasonable, and regulation is valid).

### (3) *Petitioners' Expert Witnesses*

We have received into evidence reports of petitioners' experts in economics and cost accounting, Gary C. Hufbauer and Roman L. Weil, respectively. Both reports support petitioners' theory that proper cost accounting allocates costs, including State income taxes, to the "object" or operation that causes the cost, and charges the cost against the income the operation generates. Dr. Hufbauer is of the opinion that "Any method of allocation that allocates part of the State tax cost to the firm's foreign operations is improper because it leads to an inefficient division of the firm's resources." Mr. Weil is of the opinion that

> Because the in-state operations cause the State tax cost, proper accounting allocates this entire cost to the in-state operations and charges it against the income these operations generate. The firm can accurately measure the profitability of its operations, and thereby facilitate rational decision-making, *only* if the firm allocates State tax in this manner. [Emphasis added.]

We accept that the scheme of the regulations under which the deduction for State income taxes is considered definitely related to, and therefore allocable to, the gross income with respect to which such State taxes are imposed may lead to inefficiencies. The task of reconciling a worldwide formula apportionment system to the accounting for source required for purposes of section 904 is difficult and may not lead to neat and entirely consistent results. Again, we are forced to quote the Supreme Court's recent opinion in *Barclays Bank*

*v. Franchise Tax Bd.,* 512 U.S. ____, 114 S. Ct. 2268, 2272 (1994):

> when a business enterprise operates in more than one taxing jurisdiction, arriving at "precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Container Corp.,* 463 U.S. at 164. Every method of allocation devised involves some degree of arbitrariness. See *id.,* at 182 * * *.

We are not persuaded by petitioners' experts that section 1.861–8(e)(6)(i) is an unreasonable construction of the statute.

### (4) *Tax Reform Act of 1986*

Section 1215 of the Tax Reform Act of 1986, Pub. L. 99–514, 100 Stat. 2085, 2544, added a new subsection (e) to section 864. Paragraphs (1) and (6) of subsection (e) provide, respectively, that interest and other not directly allocable expenses are to be allocated and apportioned as if all members of the affiliated group were a single corporation. Petitioners argue that Congress' action in adding section 861(e)(1) and (6) is evidence that Congress foreclosed respondent from applying a "group allocation and apportionment" method of allocation with regard to directly allocable expenses, such as taxes.

The simple answer to petitioners' argument is that, under section 1.861–8(e)(6)(i), the use of State taxable income as the basis for allocating (and, if necessary, apportioning) the State income tax deduction is *not,* per se, a group method of allocation and apportionment that allocates and apportions as if the members of the affiliated group were a single corporation. Allocation under section 1.861–8(e)(6)(i) is on the basis of the taxable income on which the State income tax is imposed. Under a worldwide formula apportionment system, a combined report may be required, which would include the preapportionment income of each member of the combined report group and the combined preapportionment income of all members of the combined report group. See *supra* sec. II.G.4. On the other hand, in a separate reporting State, the unitary business principle is applied on a separate corporation basis. See *supra* sec. II.H. In a separate reporting State, regardless of whether the corporation doing business in the taxing State is a member of a group of related corporations,

the corporations' State taxable income is computed utilizing formula apportionment by including only the preapportionment income and apportionment factors of that corporation. Thus, the regulation is neutral in operation as between formula apportionment States requiring combined reporting and those requiring separate reporting. Indeed, the basis of allocation found in the regulation precedes the amendment to section 861. See *supra* sec. IV.B. Congress' action in adding section 861(e)(1) and (6) is no evidence that section 1.861–8(e)(6)(i) contains an unreasonable construction of the statute.

### (5) *Combined Report Group Income*

Petitioners argue that section 1.861–8(e)(6)(i) is unreasonable if it allows the California tax of one member of a combined report group to be apportioned on the basis of the income of another member of that group (what petitioners would call a "group" method):

For example, respondent's Pro Rata * * * Method allocates and apportions 60.93 percent of Chevron USA's 1978 California Tax to foreign sources based on the income (including portfolio dividends) derived by other Chevron Combined Report Group members. This result is unreasonable because virtually all of Chevron USA's income, assets and employees are domestic and Chevron USA's operations did not generate any of the portfolio dividends. * * * [P's Brief at 117; record refs. omitted.]

Petitioners support their argument on the basis that "a separate corporation method is required by the statute, the consolidated return regulations, and the general rule of §§1.861–8(a)(2) (1977) and 1.861–8T(a)(2). A separate corporation method also follows from cost accounting and economic principles."

We do not agree that the consolidated return regulations and the general rule of sections 1.861–8(a)(2) (1977) and 1.861–8T(a)(2) require a separate corporation method. In substance, we have already dealt with that basis of petitioners' objection. See *supra* sec. IV.B. The "group" aspect that petitioners complain of has nothing to do with whether an affiliated group elects to make a consolidated return or not. See sec. 1501. The "group" aspect that they complain of has everything to do with combined reporting and the existence of combined preapportionment income. Indeed, as we under-

stand petitioners "group" method objection, it would apply equally to a domestic corporation with a wholly owned foreign subsidiary, which is *ineligible* to make a consolidated return. See sec. 1504(a). What petitioners complain of is simply the computation by a member of a combined report group of combined preapportionment income as a step in the calculation of State taxable income. The crux of petitioners' complaint is that combined preapportionment income will include the income of all members of the combined report group. That is not a problem addressed by the consolidated return regulations or the general rule of sections 1.861–8(a)(2) (1977) and 1.861–8T(a)(2).

We have dealt with petitioners' expert testimony in economics and cost accounting in the context of petitioners' causation argument. See *supra* sec. V.B.3.d. We are equally unpersuaded that, on the basis of economics or cost accounting, section 1.861–8(e)(6)(i) is unreasonable because it imposes a "group" method.

Combined reporting is common to unitary tax systems. That a State A corporation may pay State A tax notwithstanding that the State A corporation has little or no State income measured under a separate reporting system is simply a fact of combined reporting. Section 1.861–8(e)(6)(i) looks to the source of State taxable income as the basis for allocating (and, if necessary, apportioning) the State tax deduction. Petitioners have not persuaded us that that is unreasonable. We do not think that it is unreasonable that allocation and apportionment for Federal income tax purposes be based on combined preapportionment income (as a step in determining State taxable income).

## C. *Conclusion*

For the reasons stated, we believe that section 1.861–8(e)(6)(i) contains a reasonable construction of the statute and, therefore, is valid. See *NationsBank v. Variable Annuity Life Ins. Co. v. Commissioner,* 513 U.S. at ____, 115 S. Ct. 810, 814–815 (1995); *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,* 467 U.S. 837, 845 (1984).

## VI. *Petitioners Are Entitled To Rely on the Examples Method*

Anticipating that we might reject all of petitioners' other arguments, petitioners argue that respondent's methods of allocation and apportionment (the statutory notice and pro rata methods) impermissibly deviate from certain examples in the regulations: "They allocate and apportion State Tax proportionately to domestic and foreign source income, instead of allocating and apportioning first to domestic source income as the Example Methods generally do." Apparently, by "Example Methods", petitioners mean allocation and apportionment as illustrated in examples (25) through (32) of section 1.861–8(g) (the 8(g) examples). Although petitioners think that the 8(g) examples are improper "because they do not allocate State Tax to the in-state operations that cause the State Tax", petitioners adopt what they discern as the principles underlying the 8(g) examples as a fallback position (i.e., the examples method). Petitioners claim: "An underlying principle of these examples is that State Tax is allocated and apportioned to foreign source income only when the sum of a corporation's state taxable incomes exceeds its federal domestic source taxable income." Petitioners argue that "respondent should not be permitted to impose other methods that deviate to petitioners' detriment from the principles underlying her own examples" and the "examples would be meaningless exercises providing no guidance unless they bind the Commissioner to reach the results of the examples in cases whose facts do not materially differ from the facts of the examples."

Section 1.861–8(e)(6)(ii)(C) is entitled "Illustrations." Subdivision (1) thereof states:

*In general.* Examples 25 through 32 of paragraph (g) of §1.861–8 illustrate, in the given factual situations, the application of this paragraph (e)(6) and the general rule of paragraph (b)(1) of this section that a deduction must be allocated to the class of gross income to which the deduction is factually related. In general, these examples employ a presumption that state income taxes are allocable to a class of gross income that includes the statutory grouping of income from sources without the United States when the total amount of taxable income determined under state law exceeds the amount of taxable income determined under the Code (without taking into account the deduction for state income taxes) in the residual grouping of income from sources within the United States. * * *

Similarly, section 1.861–8(g) begins: "The following examples illustrate the principles of this section."

From such introductory language, we gather that the 8(g) examples (1) illustrate a general rule that a deduction must be allocated to the class of gross income to which the deduction is factually related and (2) employ a presumption that such class includes foreign source gross income when State law taxable income exceeds domestic source taxable income under the Code. In such latter situation, apportionment generally would be required.

Respondent's objection to petitioners' fallback position is fourfold:

(1) Petitioners have failed to prove the similarity of "the facts of this case" to the facts of the 8(g) examples;

(2) the principles petitioners discern (the examples method) appear nowhere in the regulations;

(3) petitioners have not elected the examples method;

(4) in any event, respondent's methods are consistent with the 8(g) examples.

With regard to respondent's first ground for objection, it must be remembered that the issues tried here were the California tax deduction of all petitioners and the non-California State tax deductions of Chevron U.S.A., Inc. Chevron U.S.A., Inc., paid taxes to States that, while having a formula apportionment system, did not require worldwide reporting but, rather, required separate reporting. On its face, respondent's objection is that the 8(g) examples do not apply to the California tax or to the taxes of the other States to which Chevron U.S.A., Inc., paid State taxes. If the 8(g) examples were not to apply to California or to a significant number of other States that utilize formula apportionment, we think the regulations would so state. Respondent has not otherwise pointed out dissimilarities between the State taxes at issue and the 8(g) examples. We reject respondent's claim that petitioners have failed to prove the similarity of the facts of this case to the facts of the 8(g) examples.

Respondent objects to petitioners' claim that respondent's methods are not in compliance with the 8(g) examples because they fail to allocate and apportion State tax first to domestic source income. Respondent argues that no such principle is in the regulations. We have set forth the presumption that we believe can be found in section 1.861–

8(e)(6)(ii)(C) (the presumption that the class of gross income to which a deduction is factually related includes foreign source gross income when State law taxable income exceeds domestic source taxable income). That is similar to the "underlying principle" that petitioners claim can be found in the 8(g) examples. We do not understand petitioners to be advancing any other principle with regard to the 8(g) examples. We do not find fault with the principle that petitioners have advanced.

Section 1.861–8(e)(6)(ii) and the 8(g) examples are effective, generally, for taxable years beginning after 1987. Sec. 1.861–8(e)(6)(iii). However, a taxpayer has the option of applying section 1.861–8(e)(6)(ii) (with one exception not here relevant) and the 8(g) examples with respect to deductions for State taxes incurred in taxable years beginning before 1988. Sec. 1.861–8(e)(6)(iii). Apparently, that is the "election" respondent claims petitioners have not made. No procedure is set forth for a taxpayer exercising the option provided for in section 1.861–8(e)(6)(iii). In the petition, petitioners assign error to respondent's determination of the amount of State taxes that should be allocated and apportioned to foreign source gross income. In our order dated October 14, 1994, granting petitioners' motion to limit issues for trial (the Order), we specifically state that the trial would address petitioners' fallback position. We have found petitioners' methods not to be in compliance with section 1.861–8(e)(6)(i). Nothing in section 1.861–8(e)(6)(iii) suggests that a taxpayer may opt to rely on the 8(g) examples only if such option is the taxpayer's first choice. Moreover, respondent has had sufficient notice of petitioners' intent to rely on the examples method. We find that petitioners have effectively exercised their option to rely on the 8(g) examples and that respondent has not been unduly surprised by such reliance.

We are not convinced that respondent's statutory notice and pro rata methods are consistent with the 8(g) examples. We have held that a method of allocation and apportionment fails to satisfy section 1.861–8(e)(6)(i) if the method fails to allocate State tax by reference to State taxable income. See *supra* sec. III.B. It is unclear to us whether either of respondent's methods begins with State taxable income. It is clear to us that neither the pro rata method nor the nondividend aspect of the statutory notice method follows the apportion-

ment scheme exemplified in example (25) of section 1.861–8(g) (example (25)). Plainly, the pro rata method allocates and then apportions on the basis of preapportionment income. See *supra* sec. II.J.5. The nondividend aspect of the statutory notice method would seem to do the same. See *supra* sec. II.J.4. The basis for apportionment in example (25) is State taxable income. That is to us some evidence of an inconsistency between respondent's methods and the 8(g) examples.

Petitioners have illustrated the examples method, see *supra* sec. II.J.6.b., and, based on such illustration, the examples method produces a better result for them than they would obtain under either the statutory notice or pro rata methods. See comparison *supra* sec. II.J.7.

As stated, we are unconvinced that either the statutory notice method or the pro rata method is consistent with the 8(g) examples. In the order, we limited the issues for trial to exclude, among other things, calculations under any of the parties' positions. In particular, with regard to petitioners' fallback position, we stated that any calculations would be for illustrative purposes only. At this point, it is sufficient that we find, as we have, that petitioners have exercised their option to rely on the 8(g) examples. Respondent may not impose her methods to the extent they are inconsistent with the 8(g) examples. We have discussed in some detail what section 1.861–8(e)(6)(i) requires. That discussion should be useful to the parties in interpreting the 8(g) examples. If some interpretive difficulty remains, we can deal with that in a subsequent proceeding.

## VII. *Conclusion*

We have rejected all of petitioners' arguments. We find petitioners' methods of allocation and apportionment to be contradicted by the regulation, section 1.861–8(e)(6)(i), which we find to be a permissible (reasonable) construction of the statute. The regulation is, thus, valid. We find, however, that petitioners have effectively exercised their option to rely on examples (25) through (32) of section 1.861–8(g). Respondent

may not impose her methods of allocation and apportionment to the extent that they are inconsistent with those examples.

*An appropriate order will be issued.*

---

APPENDICES

*Glossary*

1. *Affiliated Group.* The affiliated group of corporations, of which Chevron is the common parent corporation, making a consolidated return of income for Federal income tax purposes.[1]

2. *Apportionment Factors.* Factors of production, such as payroll, property and sales, used in a formula apportionment tax system (like the California Tax) to apportion the amount of worldwide preapportionment income of a multistate or multinational unitary business that may be constitutionally taxed by the State.

3. *Apportionment Fraction.* An average ratio of the combined report group's total California apportionment factors to the combined report group's total worldwide apportionment factors. Used in calculating combined California taxable income.

4. *California Apportionment Factors.* Factors of production (payroll, property, and sales) located in or attributable to California for purposes of apportioning to California for purposes of the California tax the taxable amount of worldwide preapportionment income of a multistate or multinational unitary business.

5. *California Tax.* Annual California corporate franchise tax imposed by California on a corporation's net income derived from or attributable to sources within California for a year (the income year) and due in the following year (the privilege year).[2]

6. *Chevron Combined Report Group.* For purposes of the California franchise tax return and combined report, this group includes all members of the affiliated group, plus other subsidiaries of Chevron not included in the affiliated group, such as foreign subsidiaries of Chevron operating overseas.

7. *Combined Preapportionment Income.* Under a formula apportionment tax system, the aggregate preapportionment incomes of the members of the combined report group.

8. *Combined Report.* An information return submitted along with the California tax return that is generally mandatory if related corporations are carrying on a unitary business within and without California. It shows the preapportionment income of each combined report group member (whether or not doing business within the State) and the combined preapportionment income of all members, as well as the instate and world-

---

[1] See *supra* note 1.

[2] See discussion in Findings of Fact under the heading California Franchise Tax.

wide apportionment factors of each member and the aggregate instate and worldwide apportionment factors of all members.

9. *Combined Report Group.* A group of related corporations that conduct a unitary business both within and without a State that imposes a formula apportionment State tax and that requires each member of the group to submit a combined report with its State tax return.

10. *Combined California Taxable Income.* An amount of business income subject to the California tax that equals the combined preapportionment income of the combined report group's members multiplied by an average ratio of the group's instate apportionment factors to the group's worldwide apportionment factors.

11. *Formula Apportionment.* State tax system used to determine the amount of income of a multistate or multinational business that is taxable by a State where the State treats the activities of a business within and without the State as integrated and interdependent and apportions income from all sources by use of apportionment factors to determine the portion that may be constitutionally taxed by the State.

12. *Intrastate Apportionment.* A method used by California to determine the separate corporation California taxable income and California tax liability of each combined report group member that has California factors, where more than one member of the combined report group has California factors.

13. *Portfolio Dividends.* A dividend paid from a corporation that is not included in the combined report group.

14. *Preapportionment Income.* Under a formula apportionment tax system, the gross income of a corporation having apportionment factors that subject it to such tax from the unitary business, less expenses, and before apportionment between income earned within and without the State.[3]

15. *Separate California Taxable Income.* Combined reporting group's preapportionment income multiplied by the ratio of that member's California apportionment factors to the combined report group's worldwide apportionment factors.

16. *Separate Accounting.* Under a system of separate accounting, all corporations, even related corporations, are treated as separate entities for purposes of determining the corporation's income subject to tax by the sovereign. Often, safeguards, such as the requirement of arm's-length pricing, are employed to prevent the manipulation of income among related entities. The corporate income tax imposed by the United States employs a separate accounting system.

17. *Separate Reporting.* Separate reporting is the practice of certain States to apply the unitary business principle on a separate corporation basis. Regardless of whether the corporation doing business in the taxing State is a member of a group of related corporations, the corporation's taxable income is computed utilizing formula apportionment by including only the preapportionment income and apportionment factors of that corpora-

---

[3] Nonbusiness income is excluded from preapportionment income and, generally, is allocated to the situs of the property that produced it. See Cal. Rev. & Tax. Code secs. 25123–25127 (West 1982).

tion. The corporation's State tax liability equals that taxable income multiplied by the State tax rate.

18. *State Taxable Income.* The taxable income that the law of the taxing jurisdiction attributes to the taxpayer. In the context of a State franchise or income tax based on combined reporting and formula apportionment, State taxable income is the income that the State attributes to the taxpayer after applying combined reporting and formula apportionment.

19. *Unitary Business.* The assumption under formula apportionment that the integrated and interdependent activities of a business, within and without the State, and whether carried out by one or more related corporations, constitute a single business unit or operation.

20. *Worldwide Combined Reporting.* Under formula apportionment, the practice of certain States, including California, to allow or require a group of related corporations (the combined report group) to report the preapportionment income and apportionment factors of each member, whether or not doing business within the State, as well as the combined preapportionment income and apportionment factors of all members, so that the tax may be imposed as if the combined preapportionment income were that of one person.

21. *Worldwide Apportionment Factors.* Apportionment factors without regard to location.

## Regulations

§1.861–8. Computation of taxable income from sources within the United States and from other sources and activities.

\* \* \* \* \* \* \*

(e) *Allocation and apportionment of certain deductions.* \* \* \*

\* \* \* \* \* \* \*

(6) *Income taxes*—(i) *In general.* The deduction for state, local, and foreign income, war profits and excess profits taxes ("state income taxes") allowed by section 164 shall be considered definitely related and allocable to the gross income with respect to which such state income taxes are imposed. For example, if a domestic corporation is subject to state income taxation and the state income tax is imposed in part on an amount of foreign source income, then that part of the taxpayer's deduction for state income tax that is attributable to foreign source income is definitely related and allocable to foreign source income. In allocating and apportioning the deduction for state income tax for purposes including (but not limited to) the computation of the foreign tax credit limitation under section 904 of the Code and the consolidated foreign tax credit under §1.1502–4 of the regulations, the income upon which the state income tax is imposed is determined by reference to the law of the jurisdiction imposing the tax. Thus, if a state attributes taxable income to a corporate taxpayer by applying an apportionment formula that takes into consideration the income and factors of one or more corporations related by ownership to the corporate taxpayer and engaging in activities related to the business of the corporate taxpayer, then the income so attributed is the income upon

which the state income tax is imposed. If the income so attributed to the corporate taxpayer includes foreign source income, then, in computing the taxpayer's foreign tax credit limitation under section 904, for example, the taxpayer's deduction for state income tax will be considered definitely related and allocable to a class of gross income that includes the statutory grouping of foreign source income. When the law of the state includes dividends that are treated under section 862(a)(2) as income from sources without the United States in taxable income apportionable to the state, but does not include factors of the corporation paying such dividends in the apportionment formula used to determine state taxable income, an appropriate portion of the deduction for state income tax will be considered definitely related and allocable to a class of gross income consisting solely of foreign source dividend income. A deduction for state income tax will not be considered definitely related to a hypothetical amount of income calculated under federal tax principles when the jurisdiction imposing the tax computes taxable income under different principles. A corporate taxpayer's deduction for a state franchise tax that is computed on the basis of income attributable to business activities conducted within the state must be allocated and apportioned in the same manner as the deduction for state income taxes. In determining, for example, both the foreign tax credit under section 904 of the Code and the consolidated foreign tax credit limitation under §1.1502–4 of the regulations, the deduction for state income tax may be allocable and apportionable to foreign source income in a statutory grouping described in section 904(d) in a taxable year in which the taxpayer has no foreign source income in such statutory grouping. Alternatively, such an allocation or apportionment may be appropriate if a taxpayer corporation has no foreign source income in a statutory grouping, but its deduction is attributable to foreign source income in such grouping that is attributed to the taxpayer corporation under the law of a state which attributes taxable income to a corporation by applying an apportionment formula that takes into consideration the income and factors of one or more corporations related by ownership to the taxpayer corporation and engaging in activities related to the business of the taxpayer corporation. *Example 30* of paragraph (g) of this section illustrates the application of this last rule.

(ii) *Methods of allocation and apportionment*—(A) *In general.* A taxpayer's deduction for a state income tax is to be allocated (and then apportioned, if necessary, subject to the rules of §1.861–8(d)) by reference to the taxable income that the law of the taxing jurisdiction attributes to the taxpayer ("state taxable income").

(B) *Effect of subsequent recomputations of state income tax.* [Reserved]

(C) *Illustrations*—(1) *In general. Examples 25* through *32* of paragraph (g) of §1.861–8 illustrate, in the given factual situations, the application of this paragraph (e)(6) and the general rule of paragraph (b)(1) of this section that a deduction must be allocated to the class of gross income to which the deduction is factually related. In general, these examples employ a presumption that state income taxes are allocable to a class of gross income that includes the statutory grouping of income from sources without the United States when the total amount of taxable income determined

under state law exceeds the amount of taxable income determined under the Code (without taking into account the deduction for state income taxes) in the residual grouping of income from sources within the United States. A taxpayer that allocates and apportions the deduction for state income tax in accordance with the methodology of *Example 25* of paragraph (g) of this section must also apply the modifications illustrated in *Examples 26* and *27* of paragraph (g) of this section, when applicable. The modification illustrated in *Example 26* is applicable when the deduction for state income tax is attributable in part to taxes imposed by a state which factually excludes foreign source income (as determined for federal income tax purposes) from state taxable income. The modification illustrated in *Example 27* is applicable when the taxpayer has income-producing activities in a state which does not impose a corporate income tax. The specific allocation of state income tax illustrated in *Example 28* follows the rule in paragraph (e)(6)(i) of this section, and must be applied whenever a taxpayer's state taxable income includes dividends apportioned to the state under a formula that does not take into account the factors of the corporations paying those dividends, regardless of whether the taxpayer uses the methodology of *Example 25* with respect to the remainder of the deduction for state income taxes.

(2) *Modifications.* Before applying a method of allocation and apportionment illustrated in the examples, the computation of state taxable income under state law may be modified, subject to the approval of the District Director, to reflect more accurately the income with respect to which the state income tax is imposed. Any modification to the state law computation of state taxable income must yield an allocation and apportionment of the deduction for state income taxes that is consistent with the rules contained in this paragraph (e)(6), and that accurately reflects the factual relationship between the state income tax and the income on which that tax is imposed. For example, a modification to the computation of taxable income under state law might be appropriate to compensate for differences between the state law definition of taxable income and the federal definition of taxable income, due to a difference in the rate of allowable depreciation or the amount of another deduction that is allowable under both systems. This rule is illustrated in *Example 31* of paragraph (g) of this section. However, a modification to the computation of taxable income under state law will not be appropriate, and will not more accurately reflect the factual relationship between the state tax and the income on which the tax is imposed, to the extent such modification reflects the fact that the state does not follow federal tax principles in attributing income to the taxpayer's activities in the state. This rule is illustrated in *Example 32* of paragraph (g) of this section. A taxpayer may not modify the methods illustrated in the examples, or use an alternative method of allocation and apportionment of the deduction for state income taxes, if the modification or alternative method would be inconsistent with the rules of paragraph (e)(6)(i) of this section. A taxpayer that uses a method of allocation and apportionment other than one illustrated in *Example 25* (as modified by *Examples 26* and *27*), or *29* with respect to a factual situation similar to those of the examples, must describe the alternative method on an attach-

ment to its federal income tax return and establish to the satisfaction of the District Director, upon examination, that the result of the alternative method more accurately reflects the factual relationship between the state income tax and the income on which the tax is imposed.

(D) *Elective safe harbor methods.* * * *

\* \* \* \* \* \* \*

(iii) *Effective dates.* The rules of §1.861–8(e)(6)(i) and the language preceding the examples in §1.861–8(g) are effective for taxable years beginning after December 31, 1976. The rules of §1.861–8(e)(6)(ii) (other than §1.861–8(e)(6)(ii)(D)) and *Examples 25* through *32* of §1.861–8(g) are effective for taxable years beginning on or after January 1, 1988. The rules of §1.861–8(e)(6)(ii)(D) and *Example 33* of §1.861–8(g) are effective for taxable years ending after March 12, 1991. At the option of the taxpayer, however, the rules of §1.861–8(e)(6)(ii) (other than §1.861–8(e)(6)(ii)(D)) and *Examples 25* through *32* of §1.861–8(g) may be applied with respect to deductions for state taxes incurred in taxable years beginning before January 1, 1988.

\* \* \* \* \* \* \*

(g) *General examples.* The following examples illustrate the principles of this section. In each example, unless otherwise specified, the operative section which is applied and gives rise to the statutory grouping of gross income is the overall limitation to the foreign tax credit under section 904(a). In addition, in each example, where a method of allocation or apportionment is illustrated as an acceptable method, it is assumed that such method is used by the taxpayer on a consistent basis from year to year (except in the case of the optional method for apportioning research and development expense under paragraph (e)(3)(iii) of §1.861–8). Further, it is assumed that each party named in each example operates on a calendar year accounting basis and, where the party is a U.S. taxpayer, files returns on a calendar year basis.

\* \* \* \* \* \* \*

*Example 25—Income Taxes*—(i) *Facts.* X, a domestic corporation, is a manufacturer and distributor of electronic equipment with operations in states A, B, and C. X also has a branch in country Y which manufactures and distributes the same type of electronic equipment. In 1988, X has taxable income from these activities, as determined under the Code (without taking into account the deduction for state income taxes), of $1,000,000, of which $200,000 is foreign source general limitation income subject to a separate limitation under section 904(d)(1)(1) ("general limitation income") and $800,000 is domestic source income. States A, B, and C each determine X's income subject to tax within their state by making adjustments to X's taxable income as determined under the Code, and then apportioning the adjusted taxable income on the basis of the relative amounts of X's payroll, property, and sales within each state as compared to X's worldwide payroll, property, and sales. The adjustments made by states A, B, and C all involve adding and subtracting enumerated items from taxable income as determined under the Code. However, in making these adjust-

ments to taxable income, none of the states specifically exempts foreign source income as determined under the Code. On this basis, it is determined that X has taxable income of $550,000, $200,000, and $200,000 in states A, B, and C, respectively. The corporate tax rates in states A, B, and C are 10 percent, 5 percent, and 2 percent, respectively, and X has total state income tax liabilities of $69,000 ($55,000 + $10,000 + $4,000), which it deducts as an expense for federal income tax purposes.

(ii) *Allocation.* X's deduction of $69,000 for state income taxes is definitely related and thus allocable to the gross income with respect to which the taxes are imposed. Since the statutes of states A, B, and C do not specifically exempt foreign source income (as determined under the Code) from taxation and since, in the aggregate, states A, B, and C tax $950,000 of X's income while only $800,000 is domestic source income under the Code, it is presumed that state income taxes are imposed on $150,000 of foreign source income. The deduction for state income taxes is therefore related and allocable to both X's foreign source and domestic source income.

(iii) *Apportionment.* For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation gross income, and one residual grouping, gross income from sources within the United States. The state income tax deduction of $69,000 must be apportioned between these two groupings. Corporation X calculates the apportionment on the basis of the relative amounts of foreign source general limitation taxable income and U.S. source taxable income subject to state taxation. In this case, state income taxes are presumed to be imposed on $800,000 of domestic source income and $150,000 of foreign source general limitation income.

State income tax deduction apportioned to
foreign source general limitation income
(statutory grouping):
$69,000 × ($150,000/$950,000) ....................................... $10,895
State income tax deduction apportioned
to income from sources within the
United States (residual grouping):
$69,000 × ($800,000/$950,000) ....................................... $58,105

Total apportioned state income tax deduction ........... $69,000

*Example 26—Income Taxes*—(i) *Facts.* Assume the same facts as in *Example 25* except that the language of state A's statute and the statute's operation exempt from taxation all foreign source income, as determined under the Code, so that foreign source income is not included in adjusted taxable income subject to apportionment in state A (and factors relating to X's country Y branch are not taken into account in computing the state A apportionment fraction).

(ii) *Allocation.* X's deduction of $69,000 for state income taxes is definitely related and thus allocable to the gross income with respect to which

the taxes are imposed. Since state A exempts all foreign source income by statute, state A is presumed to impose tax on $550,000 of X's $800,000 of domestic source income. X's state A tax of $55,000 is allocable, therefore, solely to domestic source income. Since the statutes of states B and C do not specifically exclude all foreign source income as determined under the Code, and since states B and C impose tax on $400,000 ($200,000 + $200,000) of X's income of which only $250,000 ($800,000 − $550,000) is presumed to be domestic source, the deduction for the $14,000 of income taxes imposed by states B and C is related and allocable to both foreign source and domestic source income.

(iii) *Apportionment.* (A) For purposes of computing the foreign tax credit limitation, X's income is comprised of one statutory grouping, foreign source general limitation gross income, and one residual grouping, gross income from sources within the United States. The deduction of $14,000 for income taxes of states B and C must be apportioned between these two groupings.

(B) Corporation X calculates the apportionment on the basis of the relative amounts of foreign source general limitation income and U.S. source income subject to state taxation.

States B and C income tax deduction
  apportioned to foreign source
  general limitation income
  (statutory grouping):
  $14,000 × ($150,000/$400,000) .......................................   $5,250
States B and C income tax deduction
  apportioned to income from
  sources within the United States
  (residual grouping):
  $14,000 × ($250,000/$400,000) .......................................   $8,750

     Total apportioned state income tax deduction ...........   $14,000

(C) Of X's total income taxes of $69,000, the amount allocated and apportioned to foreign source general limitation income equals $5,250. The total amount of state income taxes allocated and apportioned to U.S. source income equals $63,750 ($55,000 + $8,750).